437 F.2d 554
 Larry BENNETT et al., Plaintiffs, United States of America, Plaintiff-Intervenor,
v.
MADISON COUNTY BOARD OF EDUCATION et al., Defendants-Appellees,
v.
NATIONAL EDUCATION ASSOCIATION, Inc., Intervenor-Appellant.
Sonny Wellington HEREFORD et al., Plaintiffs,
v.
HUNTSVILLE BOARD OF EDUCATION et al., Defendants-Appellees,
v.
NATIONAL EDUCATION ASSOCIATION, Inc., Intervenor-Appellant.
Catherine Ann MILLER, Plaintiff, United States of America, Plaintiff-Intervenor,
v.
BOARD OF EDUCATION OF the CITY OF GADSDEN et al., Defendants-Appellees,
v.
NATIONAL EDUCATION ASSOCIATION, Inc., Intervenor-Appellant.
George Robert BOYKINS et al., Plaintiffs,
United States of America, Plaintiff-Intervenor,
v.
FAIRFIELD BOARD OF EDUCATION et al., Defendants-Appellees,
v.
NATIONAL EDUCATION ASSOCIATION, Inc., Intervenor-Appellant.
 No. 28920.
 No. 28923.
 No. 28924.
 No. 28925.
 United States Court of Appeals, Fifth Circuit.
 December 30, 1970.
 
 Soloman S. Seay, Jr., Fred D. Gray, Gray, Seay & Langford, Montgomery, Ala., Orzell Billingsley, Jr., Demetrius C. Newton, and Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., J. Levonne Chambers, Jack Greenberg, and Norman C. Amaker, New York City, Frank M. Dunbaugh, Deputy Asst. Atty. Gen., Dept. of Justice, Civil Rights Div., Washington, D. C., for appellants.
 Ralph H. Ford and Joe L. Payne, Huntsville, Ala., Reid B. Barnes, Joseph F. Johnston, Maurice Bishop, and John P. Carlton, Birmingham, Ala., and Frank J. Martin, Gadsden, Ala., for appellees.
 Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., Brian K. Landsberg, David D. Gregory and Joseph D. Rich, Attys., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for the United States as amicus curiae.
 Before RIVES, WISDOM and GODBOLD, Circuit Judges.
 PER CURIAM:
 
 
 1
 These cases, heard and submitted together, are appeals from denials by the District Court for the Northern District of Alabama of petitions by the National Education Association, Inc., to intervene in school desegregation cases. The appellant association contends that it was entitled to intervene as a matter of right under Rule 24(a) (2), Fed.R.Civ. P. There is not involved the right to intervene as a matter of discretion under Rule 24(b).
 
 
 2
 In Horton v. Lawrence County Board of Education, 425 F.2d 735 (5th Cir. 1970), the same petition for intervention was filed as in the instant cases,[1] and we held that NEA was not entitled to intervene as a matter of right.
 
 
 3
 Our decision in Horton controls the cases now before us.
 
 
 4
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The only difference is that in each of the instant cases there has been added an allegation not present inHorton that the United States already has been granted leave to intervene as plaintiff. The same briefs have been filed as in Horton and the same counsel appear for NEA.
 
 
 
 5
 WISDOM, Circuit Judge (dissenting).
 
 
 6
 I respectfully dissent. In this case and in Horton v. Lawrence County Board of Education, 5 Cir.1970, 425 F. 2d 735, the Court has failed to take account of the practicalities of school desegregation cases. I would hold that the appellant National Education Association (NEA) had a right to intervene under F.R.Civ.P. 24(a) or, alternatively, that the district court abused its discretion in denying permissive intervention under Rule 24(b).
 
 I.
 
 7
 Private plaintiffs began these school desegregation cases in the Northern District of Alabama in or before 1965. In each case the United States Justice Department intervened under Title IX of the Civil Rights Act of 1964. The cases have continued in litigation with successive court orders advancing the disestablishment of dual school systems.
 
 
 8
 The NEA is a national association of teachers. Some 8500 black members of NEA from Alabama formerly belonged to the Alabama State Teachers Association (ASTA), which merged with a white teachers' group to form the Alabama Education Association, a chapter of the NEA. ASTA was concerned about the rights of black teachers necessarily involved in the large scale desegregation programs going forward in Alabama. ASTA requested NEA to represent its members in these and other desegregation actions.
 
 
 9
 August 1, 1969, NEA filed applications to intervene in each of these four cases. The complaint in intervention alleged discriminatory assignment, demotion, and firing of teachers, and the need for an organization to represent the interests of black teachers in the school desegregation actions. NEA sought intervention as of right under F.R.Civ.P. 24(a) and permissively under Rule 24(b). The defendant school boards opposed intervention. The district court denied intervention stating:
 
 
 10
 The Court does not see any necessity for the intervention. If at some time in the course of the litigation in this case teachers are being discriminated against, the Court will then consider a new motion to intervene.
 
 II.
 
 11
 Rule 24(a) allows intervention of right when
 
 
 12
 * * * the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 13
 Before Rule 24(a) was amended in 1966, only those whom a decision would bind by res judicata could intervene as of right. Additionally, the language of the rule restricted intervention to those with a property interest in the suit. See Notes of Advisory Committee on Rules, 28 U.S.C.A. Rule 24. The 1966 amendments overcame these narrow judicial interpretations by allowing interventions that will avoid "repeated lawsuits on the same essential matter * * *." See id. at 28 U.S.C.A. Rule 19. Second, they make the standard the practical impairment of the ability to protect interests in a range of transactions. This purpose to bring together essentially similar litigation was advanced by almost identical language in Rules 19 (joinder), 23 (class actions), and 24 (intervention).
 
 
 14
 Even with this amended language we must be aware that, since decisions on proposed intervention "depend upon the contours of the particular controversy, general rules and past decisions cannot provide uniformly dependable guides." Smuck v. Hobson, 1969, 132 U.S.App.D. C. 372, 408 F.2d 175, 179. Consistent with this approach, NEA meets the standards of Rule 24(a).
 
 A.
 
 15
 NEA represents a very real interest in these school desegregation cases — that of its members who are black teachers in these school districts.[1] These teachers will be directly affected by the actions of the court and the school board in carrying out the disestablishment of the dual school systems. The decision of this Court in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211 (en banc), requires that the racial ratio of teachers in each school be the same as that in the system as a whole. Practical problems exist in shifting to such a system. With the changing racial composition of schools, there must necessarily be some replacement of black administrators with white administrators, causing the loss of important positions within the educational hierarchy. Additionally, many school systems must decrease their teaching staffs and administrative personnel because of shrinking student bodies. The complaint in intervention alleges that the defendant boards have closed and will continue to close substandard black schools resulting in a reduction in the total professional staff within the school systems; and that the school boards "refuse to reassign black professional staff members * * * solely be reason of their race or color". Moreover there is the likelihood that some teachers and perhaps supervisory personnel will be required to teach classes outside their special fields and areas of training.
 
 
 16
 In short, the problem is not simply one of correcting discrimination against a particular individual when it occurs. The problem is also one of protecting Negro teachers and administrators as a group in the upheaval caused by changing a whole school district. Such problems cannot be solved satisfactorily on a case-by-case basis. The black teachers' stake in the school system seems to me to be an interest in the "transaction which is the subject of the action." Since it is not feasible for each teacher to intervene, blacks as a group through the NEA should be able to participate in school desegregation plans while the plans are being formulated and presented to the court for approval.
 
 B.
 
 17
 NEA also meets the second test of Rule 24(a), being "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect" its interests. In theory a second suit by NEA would not be barred by res judicata — the standard for intervention before the 1966 Amendments — though its outcome might be affected by stare decisis. See Atlantis Development Corp. v. United States, 5 Cir.1967, 379 F.2d 818. More practically, a second, separate suit for faculty desegregation would be unsound for the court and the parties. The courts should handle school cases as units. This Court implicitly supports such a practice by evaluating school districts in terms of all the constitutional requirements for dismantling a dual school system. See, e.g., United States v. Jefferson County Board of Education, 5 Cir.1966, 372 F.2d 836, aff'd en banc, 1967, 380 F.2d 385; Singleton v. Jackson, supra. There are sound reasons for such a practice. The types of discrimination which a school board must abjure and undo are inherently interrelated. For instance, desegregation of student bodies cannot be separated from faculty desegregation. Planning for the latter depends on methods used to accomplish the former: which schools' racial composition will be changed; whether any schools will be closed altogether; whether a decrease in the total size of the public school student body should be planned for. We know, for example, that when formerly black schools are integrated, there may be a move to replace black administrators with whites. We know also that when black schools are closed as part of the desegregation process — which occurs more frequent than the closing of white schools — the jobs of black faculty and staff are jeopardized. Students have an interest in learning from a desegregated faculty.
 
 
 18
 In the context of mapping future plans — students, faculty, facilities, and extracurricular activities must be considered in the overall changeover. NEA may help courts avoid repetitious and inefficient litigation. The fundamental policy of Rule 24, to encourage simultaneous adjudication of related claims, is the same policy that underlies the practice of considering together all school desegregation issues.
 
 C.
 
 19
 In this case, the situation also satisfies the third test for intervention under Rule 24(a), that no existing party adequately represents the interests of the would-be intervenors. There are two other parties participating as plaintiffs: the private plaintiffs and the United States Justice Department. The private plaintiffs, students and their parents, cannot be taken to represent adequately the interests of teachers. Students are more interested in student desegregation. Their interest in fair treatment of teachers is clearly less direct than that of teachers themselves.
 
 
 20
 Neither should the Justice Department be taken as representing adequately the interests of black teachers. First, the Department itself has supported the position of NEA on appeal. Its brief states that "the energies of the normal parties to a school desegregation lawsuit are primarily devoted to resolving issues of segregation and desegregation, dualism and unitariness, * * *," that is, student desegregation. The government devotes less energy to other issues of racial discrimination, such as discriminatory assignments, dismissals and promotions of teachers. The "teachers' interests in nondiscrimination," as the Department properly observes, "may be perhaps best asserted by teachers themselves."
 
 
 21
 Second, the purpose of Congress in providing for the Attorney General's intervention in civil rights suits was to assist private parties' efforts to enforce their constitutional rights in situations where they might not be able adequately to protect them on their own. It was not to eliminate private parties as litigants. See 42 U.S.C. §§ 2000b, 2000c-6, 2000c-8. For the majority to use the intervention of the Attorney General as a reason for denying the application of the NEA to intervene would turn the statutory policy supporting government intervention upside down.
 
 III.
 
 22
 In the alternative, I think it was an abuse of judicial discretion for the trial court to deny NEA permission to intervene under Rule 24(b). The relevant language of the rule is as follows:
 
 
 23
 (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of rights of the original parties.
 
 
 24
 Thus the criteria for such intervention are (1) common questions of law or fact; and (2) no undue delay or prejudice to the rights of the original parties. The district court gave no explicit consideration to these criteria. By these criteria, I think it was an abuse of discretion to deny permission to intervene. See Nuesse v. Camp, 1967, 128 U.S. App.D.C. 172, 385 F.2d 694.
 
 
 25
 As pointed out, all issues with respect to school desegregation are handled together by the courts in this Circuit. Indeed, the appellee implicitly recognizes that the district court will supervise the desegregation of faculties as required under Singleton. It simply argues that the interests of the teachers are adequately represented by the private plaintiffs and the United States.
 
 
 26
 As to the other criterion for permissive intervention, it is hard to see how there could be undue prejudice or delay to the rights of the existing parties if this intervention were allowed. The litigation is a continuing one overseeing the long process of fully disestablishing a dual school system. Although it has been in progress for five years, the litigation is far from final, peaceful termination. And if it is true that the school boards are acting in a constitutional manner towards teachers, the addition of NEA as a party is likely to cause little delay. That additional parties always take some additional time is not a sufficient basis for denying intervention. We must remember that it is constitutional rights that are involved here.
 
 
 
 Notes:
 
 
 [1]
 The National Education Association is a proper representative for these interestsSee United Federation of Postal Clerks, AFL-CIO v. Watson, 1969, 133 U.S.App. D.C. 176, 409 F.2d 462; Smith v. Board of Education of Morrilton School District, 8 Cir. 1966, 365 F.2d 770. That the association contains both black and white members does not undercut its ability to "fairly and adequately protect the interests" of black teachers, the criteria for representation under Rule 23(a). NEA has taken clear public stands against discriminatory treatment of black teachers and has litigated many cases supporting black teachers' rights.