**Hugh T. ECHOLS, Appellant,**

**v.**

**Von S. WELLS, Appellee.**

**No. 16192.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 15, 1973.

Rehearing Denied Dec. 13, 1973.

Writ of Error Granted and Order Published March 28, 1974.

Byrnes, Myers, Adair, Campbell, Sinex & Coffman, Ronald G. Byrnes, Houston, for appellant.

Engel, Groom, Miglicco & Gibson, David A. Gibson, Houston, for appellee.

PEDEN, Justice.

Suit to recover the accumulated run payments from certain oil and gas leases and for other relief.

There was attached to the petition of plaintiff Dr. Wells and introduced in evidence an agreement by which defendant Mr. Harrop, for ten dollars and other good and valuable consideration, purported to assign to Dr. Wells a 2% working interest and a 1% overriding royalty interest in a described tract of land in Lea County, New Mexico, including all benefits under the terms of an operating agreement executed May 10, 1967 between Meadco, Ltd., and Bill C. Cotner, as well as all obligations thereunder in proportion to the interest assigned. The instrument did not name any mineral leases, and the terms of the operating agreement are not in evidence.

Plaintiff's petition alleged that on or about November 1, 1967 he became the owner of a 2% working interest and a 1% overriding royalty interest in the Bagley Lease evidenced by the assignment which we have noticed. Plaintiff further alleged:

"During all times material hereto Defendant George B. Harrop was and is receiving the run payments from the Bagley leases for Plaintiff. Prior to August 1969, Defendant Harrop monthly as the run payments were received by him, disbursed Plaintiff's proportionate amount to Plaintiff. However, Defendant Harrop wrongfully stopped disbursements to Plaintiff, and instead, has withheld said funds from Plaintiff. Defendant Harrop's assignments and/or agreements to assign said Bagley interests are solely and entirely to and for the benefit of Plaintiff, Defendant Echols having no rights thereto as between Plaintiff and Harrop. Defendant Harrop, even though demanded to do so, wholly fails and refuses to deliver unto Plaintiff any and all money wrongfully held and continuing to accrue that which is owing to Plaintiff. Such action by Defendant Harrop constituted a wrongful conversion of Plaintiff's money.

"That in August, 1969, the Defendant Hugh T. Echols notified the Defendant Harrop to stop paying the oil run payments from the Bagley leases to Plaintiff, such notification being based on Echols' wrongful claim to said runs.

"That Plaintiff has been damaged by the actions of the Defendants Hugh T. Echols and George B. Harrop in wrongfully withholding the oil payments due him under the attached assignment for which Plaintiff now sues plus interest and reasonable attorney fees for the conversion of said funds legally due Plaintiff."

Plaintiff Dr. Wells also pleaded that he had been induced by Mr. Echols to purchase additional oil and gas interests in leases known as the North Four Lakes and the Thompson leasehold interests on the strength of Echols' oral guarantee that he would hold Wells harmless on any losses resulting from these investments, but that Echols had breached this agreement with Wells to Wells' loss in the amount of $21,662.89.

Plaintiff's prayer for relief included:

"WHEREFORE, Premises Considered, Plaintiff prays that the Defendants be duly cited to appear and answer herein that upon final hearing hereof Plaintiff be deemed the legal owner and hold-

er of a Two Percent (2%) working interest and One Percent (1%) overriding royalty interest in and to the 'Bagley Leases' and all funds held by the Defendant, George B. Harrop; that the Defendants Hugh T. Echols and George B. Harrop be found to have wrongfully converted the funds of Plaintiff and that he be awarded judgment for such funds plus interest . . . against said Defendants jointly and severally and that he have judgment against . . . Hugh T. Echols . . . for the sum of at least $21,666.89 . . ."

Defendant Echols' answer contained a general denial plus allegations in paragraph 1 that there was no privity of contract between Wells and Echols as to the "Thompson Well," that any contracts are between Wells and Meadco Properties, Ltd., and that Echols received none of the funds "allegedly paid by Plaintiff, nor did Plaintiff (sic) derive any benefit therefrom."

In paragraph 2 Echols pleaded the Statute of Frauds, and in paragraph 3 he denied Wells' allegations that he was ever a partner of another defendant, Robert E. Best.

In paragraph 4 Echols alleged that Wells is suing for money not belonging to him but belonging to persons not parties to this suit.

Finally, in paragraph 6, Echols stated that Wells has been acting in a fiduciary capacity for Echols since Echols invested approximately $6,000 in the first "Bagley Well" and is entitled to reimbursement for it.

Mr. Harrop filed an interpleader and paid the accumulated oil runs, amounting to $12,813.37, into the registry of the court.

Appellant's first point of error is that the trial court erred in entertaining jurisdiction in this cause. He contends that before a determination of ownership of the funds allegedly converted can be made, appellee must first show his title to the 3%

interest arising out of the land; that to do so he must plead and prove a regular chain of title to the sovereign or to a common source as required in a trespass to try title suit and that such title has not been and cannot be proven in the courts of this state.

It is a universal principle that real or immovable property is exclusively subject to the laws of the country or state within which it is situated and no interference with it by any other sovereignty can be permitted. 16 Am.Jur.2d 27, Conflict of Laws, § 14. It is also well settled that the interest, or the nature and extent of the interest, created by a conveyance of land is determined by the law of the state where the land is situated. 16 Am.Jur.2d 34, Conflict of Laws, § 19.

However, where a party fails to introduce proof at the trial that the law of the situs of the property differs from the law of the forum and does not request the court to take judicial notice of the law of the situs, the law of the situs will be presumed to be the same as the law of the forum. Ogletree v. Crates, 363 S.W.2d 431 (Tex.1963). Since neither party offered proof as to how the law of New Mexico differs from ours as applied to the facts of this case and did not request the court to take judicial notice of it we presume that as to this matter the law of the State of New Mexico is the same as the law of this State.

It is well settled in this State that interests retained by the landowners under an oil and gas lease, including royalty, are interests in land. Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988 (1949). However, once minerals have been severed from the soil they no longer retain the characteristics of realty and are then classified as personalty. W. B. Johnson Drilling Co. v. Lacy, 336 S.W.2d 230 (Tex.Civ.App.1960, no writ); Chapman v. Parks, 347 S.W.2d 805 (Tex.Civ.App.1962, writ ref. n. r. e.); Lone Star Gas Co. v.

122

Murchison, 353 S.W.2d 870 (Tex.Civ.App. 1961, writ ref. n. r. e.); Phillips Petroleum Co. v. Mecom, 375 S.W.2d 335 (Tex.Civ. App.1964, no writ).

While appellant seriously urges that this was a suit to try title, the record reflects that it was not tried on that basis.

Echols admitted in his testimony that Harrop assigned to Wells a 3% interest in the Bagley Leases in 1967 and that he (Echols) had never owned an assignment of any written instrument reflecting them and, in particular, that he had never owned any assignment of an interest Wells may have had in the Bagley Lease. Echols also testified that Harrop had been record owner of a 5% interest in those leases and that he (Echols) had authorized Harrop to issue an assignment to Wells so Wells could borrow money. Wells had married Echols' sister. He said Wells had never made a written assignment to him of any of Wells' 3% interest. Echols explained that he was claiming his original risk money and that at the time he advanced it no written agreements were available to show his participation. He has been buying and selling oil and gas leases for the past ten years.

Mr. Harrop testified that he has an interest in four producing wells on the Bagley Lease. He was working in New York in April, 1967 when Mr. Echols came up and told him about the Bagley Lease. Echols proposed, and he agreed, that he buy a 2% working interest, and that Echols was going to hold a 2% working interest and have a 1% overriding royalty interest for turning the deal. Echols gave him the money for Echols' share of the 2%. Harrop said he purchased the 5% in his own name with the understanding that he was only buying 2%. He did not utilize all his own money in buying the 5% interest. About four months later Mr. Echols put him in touch with Dr. Wells, who paid $1320.72 for completion costs of the first wells. A few weeks later Harrop sent the assignment to Wells. Wells did not fully pay for it, but someone did. That when

production began, he sent a check to Wells each month except that in December, 1968, he sent that month's check to Echols with the approval of both Echols and Wells. He stopped sending the checks when Echols notified him of the dispute with Wells. Harrop further related that he received a total of $4,635 from Echols between April 25, 1967 and July 21 of that year. $3,000 of this went to drilling costs on the first well, $1,000 went to a third party as a finder's fee and $635 towards completion costs of the first well. Harrop introduced in evidence this copy of a letter, explaining that when he received it he first learned of the dispute between Echols and Wells:

"August 8, 1969

"Dr. Von S. Wells
1022 South Tatar
Pasadena, Texas

"RE: North Bagley Field Wells
Lea County, New Mexico

"Dear Von:

"Reference is made to the captioned interest.

"A total initial investment of $22,686.17 has been spent in the Meadco Properties, Ltd. four wells, the Cabot State, Cabot State A, the Dallas, and the Cabot B. by you and I.

"To date the records reflect that the initial investment in Cabot State A, the Dallas, and the Cabot B, being your portion, $15,965.54, has to date been paid. July runs will further reduce the payments into the initial investment made by me into the Cabot State, the first well. The total outstanding debt to date is $6,720.63 of which I contributed in the beginning $6,475.50.

"Therefore the initial well in North Bagley, The Cabot State, remains to be paid out in the amount of $6,475.50. To complete the total payment, along the same lines as the $15,965.54 was paid out, Bert will issue to me runs in the fu-

ture from these wells in the amount of $6,475.50.

Sincerely yours,

/s/ Hugh T. Echols

Hugh T. Echols

Acknowledged by:

Dr. Von S. Wells

One copy to Bert Harrop.        ”

Dr. Von S. Wells testified that he acquired the 3% interest from Harrop through Echols, but he didn't pay any money directly to Echols. He thinks Echols invested some money in the No. 1 well on the Bagley Lease.

Wells testified that he has gotten back nearly as much as his costs were, about $15,000. That he is entitled to the $12,813.37 paid by Harrop into the registry of the court because it represents money based on his 3% interest in the Bagley Lease.

It may thus be seen that the appellant did not dispute the validity of the assignment of the 3% interest from Harrop to Wells. The only claim he testified about was that he was entitled to be repaid from the run payments for what he called "risk money" he had paid out when the wells were being drilled. Neither party offered any evidence about the Thompson or North Four Lakes matters on which a recovery or offset could have been based.

■ The trial court lacked jurisdiction to determine title to the mineral interests. Although this issue was raised by the pleadings, it was not raised by the evidence, and it was not essential to the determination of ownership of the fund deposited in court. The trial court's error in denying the plea to the jurisdiction was thus harmless. However, the trial court's judgment, by reciting that all relief not expressly granted was denied, did by implication rule on title to the mineral interests. That issue should have been dismissed.

■ Appellant's next point of error is that the trial court erred in admitting into evidence over objection a copy of the purported assignment of the mineral interests from Harrop to Wells because it did not bear an authentication as provided by Article 3731a(4), Vernon's Ann.Texas Civil Statutes and Title 28, U.S.C.A., Sec. 1738. It is true that the copy bore only the certificate of the County Clerk of Lea County, New Mexico. The objection was well taken when made, Hutchins v. Seifert, 460 S.W.2d 955 (Tex.Civ.App.1970, writ ref. n. r. e.), but the instrument was later identified as authentic by the appellant and by both parties who executed it, Mr. Harrop and Dr. Wells, so admitting it into evidence did not constitute reversible error.

Appellant's third and last point of error is that the trial court erred in withdrawing the case from the jury and granting judgment in favor of Wells without allowing the appellant to put on testimony in accordance with his second amended answer or to support his defense.

This cause proceeded to trial before a jury. When the plaintiff rested the trial judge conferred with the attorneys off the record, then discharged the jury and asked the attorney for appellant (Echols) for a statement "which would preclude or take the place of any evidence on your part . . . ." The court then dictated into the record:

"It's stipulated and agreed by and between the parties that, in place and instead of testimony on behalf of Defendant Hugh Echols, the following stipulation between counsel is now made:

"That if testimony on behalf of the plaintiff (sic) had been elicited, the following proof would have been made:"

Mr. Lord (attorney for Mr. Echols) then responded:

"That defendant, Hugh T. Echols, had approximately $7,000 in what has been

referred to as the Bagley No. 1 Well. However, there is no written instrument evidencing same."

The court replied: "All right, no written agreement between plaintiff Von S. Wells and defendant Hugh Echols." Mr. Lord answered: "With regards to any reimbursement."

The court then stated that such testimony was or would have been excluded by the court under the statute of frauds, and entered judgment awarding the funds in the registry of the court to plaintiff Dr. Wells less certain fees awarded.

Since the conference by the court with the attorneys, when the plaintiff rested his case, was off the record we are not informed as to whether appellant might have waived any right to proceed. However, the appellant's original brief states that he was not allowed to put on his evidence; this statement was not challenged by the opposing party, so we may accept it as correct. Rule 419, Texas Rules of Civil Procedure.

The stipulation severely limited the scope of any offer of evidence by the appellant. But in any event, absent a showing, by bill of exception or other means, of any evidence the appellant would have offered other than that described in his stipulation, we are unable to say that the trial court committed reversible error. This case was tried as an action to determine whether it was Echols or Wells who was entitled to a fund accumulated under an assignment whose validity was undisputed and whose meaning was not questioned. The evidence Echols would have offered, according to his stipulation, would have added no basis for a more favorable determination of the suit.

We affirm the judgment of the trial court in all respects except its implied determination of title to the mineral interests; we order that issue severed, reversed and dismissed.