**William ENGLISH, Plaintiff-Appellant,**

v.

**SEABOARD COAST LINE RAILROAD CO. et al., Defendants-Appellees.**

**No. 71–3362.**

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1972.

Fletcher N. Farrington, Jr., Savannah, Ga., Morris J. Baller, New York City, Peter A. Janiak, EEOC, Washington, D. C., Bobby L. Hill, Joseph Jones, Jr., Savannah, Ga., Jack Greenberg, William L. Robinson, New York City, John de J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper. Chief, Appellate Section, Philip B. Sklover, Atty., Equal Employment Opportunity Commission, Washington, D. C., for plaintiff-appellant.

Stanley M. Karsman, Malcolm Maclean, Savannah, Ga., Edward A. Charron, Jacksonville, Fla., James L. Highsaw, Jr., Washington, D. C., Charles A. Edwards, Mark M. Silvers, Jr., Savannah, Ga., Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, P. C., Savannah, Ga., for Seaboard Coast Line Railroad Co.

Before JOHN R. BROWN, Chief Judge, and GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

This is an interlocutory appeal under the provisions of 28 U.S.C. § 1292(b) from an order of the district court upon a "motion to dismiss for failure to join indispensable parties" made by Seaboard Coast Line Railroad Company (Seaboard), appellee.[1] The district court denied the motion but stayed the action

---

1. Neither the district court's order of September 7, 1971 nor its amended order of September 18, 1971 (in which it certified the order as appealable under 1292(b)) specifically refer to Rule 19. However a failure to join a party under Rule 19 is a ground for a Rule 12(b) motion to dismiss. Rule 12(b) (7) FRCP. Furthermore, the briefs of the parties make clear that the court's decision was predicated upon that rule. Rule 19 is quoted below in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed as a plaintiff but refuses to do so, he dismissed, the absent person being thus regarded as indispensable. The factors

until such time as the plaintiff files an amendment naming as defendant one or more of the white employees included in said class, whereupon this Court will pass an order pursuant to Rule 23(a) providing for service upon said class to show cause why they should not be joined as defendants. English contends on appeal that the white employees are not parties to be joined if feasible under Rule 19(a) FRCP because the present union defendants adequately represent their interests. We reject that contention and affirm as modified and remand.

This employment discrimination suit was brought by the appellant William English, Jr., in behalf of himself and other similarly situated black employees of Seaboard against Seaboard and against the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC), Local Number 5 of BRAC and Local Number 1586 of BRAC. English and the class he represents are members of BRAC. At the time the suit was brought black employees were members of one local and the white employees of the other. Since that time the two locals have merged by order of the district court.[2]

The complaint was filed under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[3] The gist of the complaint is that there is "across the board discrimination" by Seaboard and BRAC against English and his class. More specifically, the complaint alleges, "a racially segregated, dual system of jobs and lines of progression"; restriction of blacks to inferior jobs; unequal application of job requirements to blacks seeking traditionally white jobs; and a "lock-in" seniority system which perpetuates racially identifiable dual job categories. The complaint further alleges that BRAC has breached its duty of fair representation in that it has participated or acquiesced in Seaboard's discriminatory practices through collective bargaining agreements.

English and the members of his class are black employees of Seaboard in Waycross, Georgia; all employees and job classifications involved are within the BRAC craft unit for collective bargaining purposes. Within the craft unit there are two groups, Group 1 and Group 2, which English describes as "roughly corresponding to clerk's and laborer's jobs," respectively. Group 1 jobs pay better and are more prestigious than Group 2 jobs. The majority of whites hold Group 1 jobs, but there are no blacks in this group category.

Under the collective bargaining agreement between BRAC and Seaboard, Group 1 seniority and Group 2 seniority are kept separate. Group 2 seniority is not transferable to Group 1 in the event of transfer or promotion. In view of the fact that all blacks are in Group 2 no blacks have any usable seniority rights for Group 1 jobs. Seaboard seeks to join the white clerks in Group 1 whose seniority might be adversely affected should English prevail on the merits.[4]

to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

2. English v. Seaboard Coast Line RR, 4 CCH E.P.D. ¶ 5531 (S.D.Ga.1972).

3. The original complaint referred only to Title VII. In a subsequent amendment, the 1981 claim was added, and jurisdiction was also invoked pursuant to 28 U.S.C. § 1337.

4. The following is from the brief of appellant English:
As relief, plaintiff seeks, *inter alia*, appropriate modification of the existing seniority system. Such relief would no

The district court denied the motion to dismiss but stayed the action until such time as one or more white employees were joined. In doing so the court relied on one of its earlier decisions which reached a similar result, Hayes v. Seaboard Coastline R.R.[5] The rulings of the district court in both the instant case and in *Hayes* were based largely on Banks v. Seaboard Coast Line R.R.[6] In *Banks* the court ordered that if plaintiffs failed to join one or more of the white employees the motion to dismiss would be granted.

The district court felt that in the circumstances of this case the seniority rights of the absent white employees would be affected adversely if the requested relief was granted and that the union could not adequately and fairly represent the interests of both black and white members. We view these conclusions as a finding under Rule 19(a) (2) (i) that disposition of the case without the absent white employees who have an interest in the action may as a "practical matter impair or impede" their ability to protect their interests.

Obviously Seaboard cannot and does not advance a serious claim that the District Court lacks plenary authority to eradicate all remaining vestiges of racial discrimination which infect collective bargaining agreements relating to the transfer and promotion of its employees. The power to effect employer-union color-blindness is indisputable.[7] Likewise, Seaboard recognizes that this Court has formulated or approved the implementation of decrees accomplishing that result in a number of cases in which individual white union members were not joined as representative defendants under Rules 19(a) and 23. United States v. Jacksonville Terminal Co., 5 Cir., 1971, 451 F.2d 418, cert. denied, 1972, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815; Vogler v. McCarty, Inc., 5 Cir., 1971, 451 F.2d 1236; Local 189, United Papermakers and Paperworkers v. United States, 5 Cir., 1969, 416 F.2d 980, cert. denied, 1970, 397 U.S. 919, 90 S.Ct. 926, 25 L. Ed.2d 100. Consequently, there is no room now for an argument that in *all* circumstances in which the implementation of a remedy may conceivably affect the employment interests of white union members the District Court *must* find that the union alone does not adequately represent its white membership.

Even in circumstances in which the union cannot adequately represent both black and white members because the remedy ultimately devised may entail an irreconcilable conflict between the interests of those members, it is clear that Rule 19(a) has never required joinder in every case in which "interests" of white persons may be adversely affected by a court decree terminating racially discriminatory practices. For example, within the context of public school desegregation there are innumerable instances in which white children, parents and teachers will be deprived of "rights" (for example, the "right" to attend a neighborhood school) without ever having had the opportunity to participate directly in the judicial proceedings which divest them of those "rights." Moreover, when these adversely affected groups have themselves taken the initiative by seeking to intervene under Rule 24, we have frequently declined to per-

---

doubt include an order allowing qualified Group 2 employees to exercise their accrued seniority rights in applying or bidding for transfer or promotion into Group 1 jobs, possibly in competition with present white Group 1 employees.

5. 3 CCH E.P.D. ¶ 8169 (S.D.Ga.1971).

6. 51 F.R.D. 304 (N.D.Ga.1970).

7. In a long series of cases beginning with Steele v. Louisville & Nashville Railroad Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89

L.Ed. 173 the Supreme Court of the United States "has emphatically and repeatedly ruled that an exclusive bargaining agent under the Railway Labor Act is obligated to represent all employees in the bargaining unit fairly and without discrimination because of race and has held that the courts have power to protect employees against such invidious discrimination." Conley v. Gibson, 1957, 355 U.S. 41, 42, 78 S.Ct. 99, 100, 2 L.Ed.2d 80, 82.

mit it. St. Helena Parish School Board v. Hall, 5 Cir., 1961, 287 F.2d 376, 379, cert. denied, 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33; Horton v. Lawrence County Board of Education, 5 Cir., 1970, 425 F.2d 735; Bennett v. Madison County Board of Education, 5 Cir., 1970, 437 F.2d 554. We perceive no basis for the supposition that a union's representation of its membership is different in principle from a school board's representation of the community. In either case the defendant is being compelled to eliminate the consequences of unlawful racial discrimination by taking measures inimical to the traditional advantages of white persons having a vested interest in the status quo.

However, as a practical matter we must recognize that the elimination of racial discrimination in private employment frequently entails a much more involved, subjective accommodation of competing black-white interests because of the limited number of job vacancies and the direct, immediate impact on employee interests that results from any change in existing seniority levels.[8] In such litigation the District Court may well regard individual white representation as insurance that the ultimate goal of terminating discrimination is accomplished in the most equitable and least disruptive manner possible. When an experienced Trial Judge reaches such a conclusion we cannot disregard it in the absence of compelling and persuasive justification, particularly in light of the Court's traditional broad discretion to order joinder under Rule 19. "While this discretion may not have the constrictions of a clearly erroneous rule, we must be mindful that the district judge is closer to the arena and is often in a better position to survey the practicalities involved in the litigation." Brous-

sard v. Columbia Gulf Transmission Co., 5 Cir., 1968, 398 F.2d 885, 889.

We find no merit in the contention of English that since the white employees are not parties to the collective bargaining agreement they have no interest in this litigation. Black employees, not the company or the union, instituted this action. While the rights of employees may be affected adversely without their presence as a result of collective bargaining, a suit in federal court brought by black employees is simply a different situation. Rule 19 permits the joinder of employees under proper circumstances; there is no such rule which applies to collective bargaining.

■ The remaining issue raised by English is that since white employees have not sought to intervene they must have no interest in participating in this litigation. There is no evidence before the court of any lack of interest by white employees in this suit. In any event, our concern here is not with how white employees might feel personally about joining in this litigation but whether joinder under Rule 19(a) was proper. We conclude that the district court did not err in its finding that joinder is appropriate.

■ However, the court here did not order joinder but instead stayed the action until such time as English filed an amendment naming as defendant one or more of the affected white employees. Such an order is not in full accord with the mandate of Rule 19(a). Under that rule the remedy for nonjoinder is joinder by order of the court.[9] When the court decides under Rule 19(a) that a person should be joined the court should direct the plaintiff to amend his complaint to add the person. Failure to comply with such an order may result in dismissal of the plaintiff's action under

8. United States v. Jacksonville Terminal Co., *supra*, 451 F.2d at 460 (dissenting opinion); Vogler v. McCarty, Inc., *supra*, 451 F.2d at 1239 (dissenting opinion).

9. See Ferguson v. Thomas, 430 F.2d 852, 860 (5th Cir. 1970); Schutten v. Shell Oil Co., 421 F.2d 869, 873 (5th Cir. 1970); 7 Wright, Federal Practice & Procedure §§ 1609, 1611 at 83, 108 (1972).

Rule 41(b) FRCP for failure of a party to comply with an order of court.[10] Dismissal under Rule 19 is proper only after it is shown that a 19(a) party *cannot* be joined and that in equity and good conscience the case should not proceed without such party. There is no indication here that the white employees could not be joined, hence a 19(b) determination was not required in the present posture of the case.

■ The Equal Employment Opportunity Commission (EEOC) has filed an *amicus curiae* brief in this appeal protesting [11] that

holding that white employees are *indispensable* to a federal court adjudication that a collective bargaining agreement violates Title VII would perforce make white employees *indispensable* in the Commission's administrative process. Such a process would, we submit, inject parties into the Commission's process which Congress contemplated would be represented by the parties to the collective bargaining agreement. (emphasis added).

We make no finding of indispensability here. Only where joinder is not feasible must the court proceed under 19(b) to determine whether to proceed or dismiss for lack of an indispensable party. And only if the court decides that it must dismiss because of the absence of a 19(a) party is that party given the conclusory label "indispensable." [12]

Of course, we do not even faintly suggest that the ultimate inability of the plaintiffs to join representative white defendants in a suit seeking an end to unlawful employment discrimination would necessitate or justify the dismissal of the action.[13] And again we wish to emphasize that our decision does not mean that in evey case of this type affected white employees must be joined under Rule 19(a). That determination must necessarily be made by the district court in consideration of the facts and circumstances of each particular case. We decide here only that upon the facts of this case we think the district court was justified in deciding that white employees should be joined.

Although we do not vacate the order of the district court, we remand the cause with directions that the court modify its order so as to specifically direct joinder of one or more of the white employees. This modification does not affect that portion of the court's order made pursuant to Rule 23(a). We note in conclusion that this case is now over two years old and it is still in the pleading stage. Without attempting to designate responsibility for this delay, we urge all concerned to proceed in good faith to bring this litigation to a close.

Modified, affirmed and remanded.

10. Transit Casualty Co. v. Security Trust Co., 396 F.2d 803 (5th Cir. 1968) ; see Window Glass Cutters League v. American St. Gobain Corp., 428 F.2d 353 (3d Cir. 1970).

11. The EEOC also contends that if the white employees are to be joined, joinder should be under Rule 21 FRCP. While Rule 21 might be used as a wholly separate means of joinder we find it unnecessary to decide that question since we have already concluded that joinder under Rule 19(a) was appropriate.

12. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) ; Schutten v. Shell Oil Co., 421 F.2d 869, 873 (5th Cir. 1970) ; 7 Wright, *supra* note 7, at § 1607.

13. The theory that such individuals are "indispensable parties" under Rule 19(b) has frequently encountered a hostile reception in the courts. United States v. Pilot Freight Carriers, Inc., W.D.N.C. 1972, 4 EPD ¶ 7709 ; United States v. St. Louis-San Francisco Railroad Co., E.D. Mo., 1971, 52 F.R.D. 276 ; cf. Bowe v. Colgate-Palmolive Co., 7 Cir., 1969, 416 F.2d 711 (sex discrimination) ; Thompson v. New York Central Railroad Co., S.D.N.Y., 1966, 250 F.Supp. 175.