Diana L. SPIRT, etc., Plaintiff,

v.

TEACHERS INSURANCE AND ANNUI-
TY ASSOCIATION OF AMERICA et
al., Defendants.

No. 74 Civ. 1674.

United States District Court,
S. D. New York.

July 1, 1976.

Kenneth D. Wallace, New York City, for plaintiff.

Rogers & Wells, New York City, for defendants; William R. Glendon, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Diana L. Spirt ("Spirt") moves for class action certification pursuant to Rule 23, Fed.R.Civ.P. Defendants Teachers Insurance and Annuity Association of America ("TIAA") and College Retirement Equities Fund ("CREF") cross-move for an order pursuant to Rule 56, Fed.R.Civ.P., granting partial summary judgment in their favor and for an order pursuant to

Rules 12(c) and 19(a), Fed.R.Civ.P., dismissing this action for failure to join indispensable parties. For the reasons hereinafter stated, the motions are denied with the exception of the motion to dismiss for failure to join indispensable parties which is conditionally granted in part.

Plaintiff, a female professor at Long Island University ("LIU"), charges sex discrimination in the operation of a pension plan administered by defendants. This pension plan utilizes actuarial tables which indicate that women at retirement age have a longer life expectancy than do men at that same age. Consequently, the amount of each periodic payment made to a female annuitant selecting a single-life option is smaller than that paid her male counterpart. Use of sex-based tables and the disparity in treatment which results, Spirt claims, constitute violations of the Fourteenth Amendment to the Constitution, 42 U.S.C. § 2000(e)(1) et seq. ("Title VII"), 42 U.S.C. § 1981 et seq., and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). TIAA and CREF deny that their pension plan unlawfully discriminates asserting instead that the plan has a demonstrably rational and equitable basis.

## I. *Defendants' Motion for Partial Summary Judgment.*

■ Defendants move for partial summary judgment claiming that plaintiff has failed to comply with the jurisdictional prerequisites to a suit under Title VII. Two lapses in this regard are cited. First, the complaint in this action was filed on April 15, 1974 while no charge was filed with the Equal Employment Opportunities Commission ("EEOC") until on or about October 19, 1974. The EEOC issued a Notice of Right to Sue on August 4, 1975.

A Right to Sue letter has been held to have the effect of ratifying a prior filed suit. The Court in *Black Musicians of Pittsburgh v. Local 60–471, American Federation of Musicians*, 375 F.Supp. 902, 906–07 (W.D.Pa.1974) stated:

Here, . . . the suit was brought *before* the issuance of the right to sue

letter, even before the filing of the charge with the EEOC. Asserting one's rights too late is quite a different matter from asserting them too soon. *Henderson v. Eastern Freight Ways.* [460 F.2d 258 (4th Cir. 1972)] . . . . [T]he issuance of the right to sue letter, in effect, validated the pending suit making it unnecessary to file another suit. Under the circumstances, we do not think a dismissal of the complaint at this stage would fulfill the purposes of the [Civil Rights] Act.

Defendants renew their argument that plaintiff has not pursued her remedies at the state level, as mandated by the statute. In dealing with this matter, the Court is mindful of the recent decision by the Court of Appeals in *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. June 7, 1976). The Court of Appeals noted that summary judgment must be used sparingly and observed:

There is an additional factor equally vital to the resolution of this case. Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen. Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Prior decisions, both of the Supreme Court and of this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today.

Finally, the Court expressed a preference that such issues be left to trial.

■ Defendants' initial motion for summary judgment based upon plaintiff's alleged failure to pursue her state remedies was denied because factual questions remained. They now seem to have multiplied. A determination of the extent and nature of communications between Spirt and her attorney and the state authorities is best left to trial, where, for example, testimony could be adduced as to "the standard

practice of the New York State agency." At that time also perhaps the meaning of the EEOC phrase "Failure to Proceed," can be clarified. At this point, these factual questions are open. This coupled with the Court of Appeals' implied directive that issues of compliance with Title VII's procedural demands be resolved at trial compels the Court to deny defendants' motion for partial summary judgment.

II. *Defendants' Motion to Dismiss for Failure to Join Indispensable Parties*

TIAA–CREF move to dismiss for failure to join indispensable parties. They claim that joinder of both the employer educational institution, LIU, and of all the male participants in the challenged pension system is mandated.

Rule 19(a), Fed.R.Civ.P., states in pertinent part:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Briefly outlined, the operation of defendants' pension program, as described in their papers, is as follows. The plan is commonly established by resolution of the board of trustees of the educational institution. Provision is made for a particular percentage of salary to be contributed both by the institution and by the employee. There is no contract between TIAA and CREF and the institution; instead, an individual contract is sent by defendants to the employee.

TIAA–CREF claim that, should plaintiff succeed in this action, costs of the pension program will rise and these increased costs will likely be borne by the participating institutions. Therefore, LIU, as such an institution, has an interest in this litigation which requires its joinder. Additionally, defendants argue complete relief is impossible in the absence of the employer.

These contentions would appear to have merit. In *Barninger v. National Maritime Union*, 349 F.Supp. 803, 805 (S.D.N.Y.1972), it was determined that trustees of a pension plan would remain as party defendants where their involvement concerned more than "a mere administrative detail of pension trust administration." Here, LIU has chosen to adopt defendants' system and to contribute to it; this constitutes affirmative, active participation.

To join LIU is not to suggest its liability. *Hodgson v. School Board, New Kensington-Arnold School District*, 56 F.R.D. 393 (W.D. Pa.1972) involved a claim under the Equal Pay Act in which the defendant School Board sought to join the Union representing the employees whose compensation was at issue. The Court, in granting the School Board's motion, observed:

This action endemically involves the potential for altering and restructuring the compensation provisions of the collective bargaining agreement between the defendant and the proposed defendants.

56 F.R.D. at 395.

The absence of a contract *per se* between the University and TIAA–CREF is not significant; the instant suit may yet alter the relationship between these institutions as embodied in and effectuated through the resolution and the individual contracts.

Additional support for the joinder of LIU is offered by *McDonald v. General Mills, Inc.*, 387 F.Supp. 24 (E.D.Cal.1974). In that action, a female student at Sacramento State College charged sex discrimination by employers who had interviewed through the College's Graduate Placement Center. The court joined the College as a party, "so that complete, consistent, and efficient settlement of the controversy can be achieved." 387 F.Supp. at 38.

Here, too, resolution of Spirt's claim that defendants' pension program is discriminatory requires the presence of her employer LIU. Without the University's participation, the challenged program could not operate. When an entity is more accurately described as an "active participant," rather than merely a "key witness," joinder is indicated. *Haas v. Jefferson National Bank*, 442 F.2d 394, 398 (5th Cir. 1971).

It should also be noted that in her charge to the EEOC, Spirt named both LIU and TIAA–CREF. Clearly, the relationship out of which the alleged discrimination grows is a triangular one. Rule 19(a), Fed.R.Civ.P., mandates the presence of LIU and the Court directs its joinder.

Defendants have also moved for the joinder of all the male participants in the pension plan, asserting that if the changes demanded by plaintiff are effectuated, the males will bear the burden of increased costs and may sue TIAA–CREF on a reverse discrimination theory. Thus, it is claimed, the males have an interest in the outcome of this suit and their absence poses a risk to the defendants.

Among the authorities cited by TIAA–CREF is *English v. Seaboard Coast Line Railroad Company*, 465 F.2d 43 (5th Cir. 1972). That case does indeed include a helpful discussion. While bowing to the discretion of an experienced trial judge in joining white employees in a suit by black workers charging racially discriminatory employment practices, the Court of Appeals observed that, "it is clear that Rule 19(a) has never required joinder in every case in which 'interests' of white persons may be adversely affected by a court decree terminating racially discriminatory practices." 465 F.2d at 46.

The Supreme Court, too, has recently dealt with the question of reverse discrimination. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 U.S.L.W. 4356 (U.S. Mar. 24, 1976). In awarding retroactive seniority status to a class of black employees, the court confronted the argument that this would conflict with the economic interest of other workers.

> [I]t is apparent that denial of seniority relief to identifiable victims of racial discrimination on the sole ground that such relief diminishes the expectations of other, arguably innocent, employees would if applied generally frustrate the central "make-whole" objective of Title VII. These conflicting interests of other employees will of course always be present in instances where some scarce employment benefit is distributed among employees on the basis of their status in the seniority hierarchy. But, as we have said, there is nothing in the language of Title VII, or in its legislative history, to show that Congress intended generally to bar this form of relief to victims of illegal discrimination, and the experience under its remedial model in the National Labor Relations Act points to the contrary. Accordingly, we find untenable the conclusion that this form of relief may be denied merely because the interests of other employees may thereby be affected. "If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed." *United States v. Bethelehem Steel Corp.*, 446 F.2d 652, 663 (C.A.2, 1971).

424 U.S. at 774, 96 S.Ct. at 1269, 44 U.S.L.W. at 4364.

In a footnote to this statement, the court cited the Fifth Circuit's decision in *Volger v. McCarty, Inc.*, 451 F.2d 1236, 1238–39 (1971):

> Adequate protection of Negro rights under Title VII may necessitate, as in the instant case, some adjustment of the rights of white employees. The Court must be free to deal equitably with conflicting interests of white employees in order to shape remedies that will most effectively protect and redress the rights of the Negro victims of discrimination.

424 U.S. 775, 96 S.Ct. at 1269, 44 U.S. L.W. at 4364 n. 35.

Title VII forbids sex discrimination as well as racial bias. In fashioning a remedy to correct violations of the Act, the courts cannot be deterred by fears of potential adverse impact upon beneficiaries of a discriminatory *status quo.* There can be no vested interest in an unlawful practice.

Since the male participants cannot legitimately assert a protectable interest, they need not be joined pursuant to Rule 19(a). And, their absence poses no threat to TIAA–CREF. If the challenged pension program is found to violate the laws prohibiting sex discrimination and defendants are ordered to alter its operation, the affected men could not succeed in a claim asserted against good faith compliance with such a decree. Accordingly, the male participants need not be joined.

### III. *Plaintiff's Motion for Certification as a Class Action.*

■ Lastly, plaintiff's motion for certification as a class action must be determined. The Court is guided by the following provisions of Rule 23, Fed.R.Civ.P.:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*　　\*　　\*　　\*　　\*　　\*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The discussion of the class action format in employment discrimination suits found in

*Bradford v. Peoples Natural Gas Company, Inc.,* 60 F.R.D. 432, 435 (W.D.Pa.1973) is worth noting:

As a general rule of thumb it might be said that where employment discrimination is urged on the basis of specific circumstances relating to the individuals involved, a class action would be inappropriate. The same would be true if the issue depended on construction or application of particular language in a statute or collective bargaining contract, where relitigation would normally be effectively barred by *res judicata.* The class action technique would be more appropriate however, where a general policy adverse to the advancement of womankind is involved, not directed towards particular individuals nor involving specific issues of law or fact, but having a general adverse impact on numerous individuals arising as a consequence of such policy.

In the Court's view, the instant action falls within the second category.

Defendants' practice of using sex-based actuarial tables is under attack in this action. This usage constitutes a definite fact issue. It does not relate to the discrete grievance of a single individual. Nor does it involve a generalized amorphous policy of refusing to hire or promote or confer certain benefits upon a specific disadvantaged group.

The issue in this suit is a narrow one and specifically directed at the actuarial tables utilized by defendants in the operation of their pension programs. The resolution of the question of whether their use constitutes sex discrimination would not be assisted by maintenance of this suit as a class action.

Judge Friendly, in *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), stated:

[Rule 23(b)(2)] authorizes maintenance of a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunc-

tive relief or corresponding declaratory relief with respect to the class as a whole." But insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in *Vulcan Society v. Civil Service Comm'n,* 490 F.2d 387, 399 (1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated, see *Bailey v. Patterson,* 323 F.2d 201, 206–207 (5 Cir. 1963), cert. denied, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); cf. *United States v. Hall,* 472 F.2d 261, 266 (5 Cir. 1972), as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.

The practical significance of the denial of class action designation was thus limited to the claim for a mandatory injunction ordering monetary restitution. TIAA–CREF admit, in their memorandum opposing this motion that, "a decision in [plaintiff's] favor, practically speaking, would equally affect all participants in the future." Clearly, if defendants must abandon their use of sex-based actuarial tables they must do so with regard to all of those in the pension program, not simply the instant plaintiff.

Consequently, class action status here would be in Judge Friendly's words "largely a formality." Where certification would be unduly burdensome either to the Court or to one of the parties, the Court should not acquiesce in such a formalism.

One valid aim of a class action may be to secure, in a single suit, numerous small damage claims. Although monetary relief

incidental to the grant of an injunction and declaratory judgment may be awarded in a Rule 23(b)(2) class action, *Lynch v. Sperry Rand Corporation,* 62 F.R.D. 78, 85 (S.D.N. Y.1973), it does not seem appropriate here. Back payments would only fall due if unisex actuarial tables were used retroactively. And, such back payments would be owed only to those women who had received pensions when sex-based tables were in use.

Defendants divide participants in the pension program into two categories: "deferred annuitants," those who are presently contributing, and "immediate annuitants," those who have chosen an option and are receiving their retirement benefits. Spirt is a "deferred annuitant" having not yet retired. She is not yet the recipient of a pension and therefore would not be entitled to back payments owed to those whose retirement benefits were computed pursuant to a discriminatory formula. Consequently, Spirt cannot represent a class of such persons and her action cannot be certified as a class action for purposes of monetary relief.

This is not to suggest that plaintiff as an individual lacks standing to seek injunctive and declaratory remedies to halt TIAA–CREF in their use of certain tables. In *Rosen v. Public Service Electric & Gas Co.,* 477 F.2d 90, 94 (3d Cir. 1973), which challenged a private firm's pension plans, an active employee was found to have "a sufficient personal stake in the outcome of this case to assure that concrete adverseness will occur." Spirt's stake in the outcome, as a woman of 51 with vested rights in the program, is likewise sufficiently concrete so that she may press individually for a declaratory judgment and the grant of an injunction.

One further consideration militates against class action certification. Spirt purports to represent all the female participants in defendants' pension plans. These women are employed at many different institutions throughout the nation. The Court has determined that Spirt's employer, LIU, must be joined. If this suit were

certified as a class action, logic would compel the conclusion that all the institutional participants in TIAA–CREF must be joined. Or, since Rule 19, Fed.R.Civ.P., is expressly "subject to the provisions of Rule 23," LIU could be saddled with the responsibility of being the class representative for all the institutions. Either alternative would be unduly burdensome to the Court and to the involuntary defendant University; neither would advance the litigation.

In summary, class action certification of Spirt's suit for an injunction and declaratory judgment would be a formality. She is not an appropriate class representative for the assertion of claims for incidental money damages. Moreover, the presence of LIU as a necessary party with its unavoidable implication that class action status would mandate joinder of scores of other institutions argues forcefully against certification.

### IV. *Conclusion*

For the foregoing reasons, the Court denies plaintiff's motion for class action certification as well as defendants' motion for partial summary judgment. Defendants' motion to join certain parties is denied as to the male participants in the pension program and granted as to the plaintiff's employer, LIU. The Court directs that LIU be joined as a party pursuant to Rule 19(a), Fed.R.Civ.P., and plaintiff is given 30 days from the date of this decision to file an amended complaint joining LIU as a party defendant.

It is so ordered.