**SHOWTIME GAME BROKERS, INC., Plaintiff,**

v.

**BLOCKBUSTER VIDEO, INC., Defendant.**

**No. IP 93–628 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 2, 1993.

---

Gary D. Sallee, David B. Quick, Hughes & Hughes, Indianapolis, IN, for plaintiff.

Mark J.R. Merkle, Carl J. Becker, Krieg DeVault Alexander & Capehart, Indianapolis, IN, for defendant.

## ENTRY

BARKER, District Judge.

This motion comes before the Court upon Defendant Blockbuster Video, Inc.'s ("Blockbuster") Motion To Dismiss Plaintiff Showtime Game Brokers, Inc.'s ("Showtime") Complaint for failure to join Pacific Game Brokers, Inc., ("Pacific") as a necessary and indispensable party. *See* Fed.R.Civ.Proc. 19. For the reasons set forth below, the Court denies Blockbuster's Motion To Dismiss and orders Showtime to join Pacific as a necessary party to this action within forty-five (45) days of this Entry. The court also grants

Showtime leave to amend its Complaint in order to comply with the terms of this Entry.

## BACKGROUND

Showtime, an Indiana Corporation, is a broker of movies, video games, and other related video products and acts as an intermediary between the retailers and the suppliers of such products. Blockbuster is a Florida Corporation which rents and sells movies and video products from retail outlets in several states, including Indiana. It places product orders with regional suppliers and brokers from its district and corporate headquarters for shipment to local stores. Around November, 1989, Blockbuster began ordering products from Pacific, a Washington corporation and broker of video products, though the latter did not directly supply Blockbuster's local stores. Rather Pacific approached Showtime with an offer to share the commissions from its sales to Blockbuster in exchange for Showtime's service of Blockbuster's accounts within its region. Pacific entered into the agreement with Showtime around November, 1989,[1] which provided that Blockbuster would establish an account in Showtime's name, Showtime would supply the products, and both Showtime and Pacific would split the commission from those sales. *See* Amend. To Mem. In Opp'n To Def.'s Mot. To Dismiss Under Rule 12(b)(7), at 2 [hereinafter "Amended Memorandum"]. Furthermore, Showtime would send invoices for the product to Blockbuster's district or corporate headquarters, and Blockbuster would pay Showtime, who would then pay Pacific its commission. *See* Br. In Supp. Of Blockbuster Videos, Inc.'s Mot. To Dismiss, at 1 [hereinafter "Def.'s Br. In Supp."]. The invoices identified Showtime as the "supplier" with the product "sold by" Pacific. *See Id.* at Ex. A.

This arrangement continued until approximately March, 1991, when Showtime alleges that Blockbuster began to pay Pacific directly without its consent or knowledge. *See* Amended Memorandum, at 2. The payments to Pacific continued through July, 1991; thereafter, Showtime received the payments directly from Blockbuster. According to Showtime, the invoices paid to Pacific totaled approximately $254,040.78. *Id.* at 3. Furthermore, Showtime contends that not until June, 1993, did Pacific begin to send invoices directly to Blockbuster; thus, the payments made to Pacific before that time were unjustified. *Id.* However, Showtime admits receiving from Pacific approximately $100,002.17 in commissions from the June–July sales to Blockbuster. *Id.*

Blockbuster claims that it approached both Pacific and Showtime in the early part of June, 1991, and notified them that a new electronic ordering and billing system was being implemented, making it necessary for both parties to use it. *See* Reply Br. In Supp. of Blockbuster Videos, Inc.'s Mot. To Dismiss, at 3–4 [hereinafter "Def.'s Reply Br."]. Nonetheless, only Pacific complied with Blockbuster's request, and therefore it, and not Showtime, received the payments. *Id.*

Showtime demanded that Blockbuster pay all of the $254,040.78 due on the invoices. Blockbuster refused to pay because it had already paid those invoices to Pacific. Showtime then filed suit in Indiana on April 20, 1993, to recover the amounts due on the invoices. *See* Complaint, at 4. In its Complaint, Showtime alleges that Blockbuster entered into a contract for the sale of goods with Showtime and that Blockbuster breached the contract by not paying for the goods. *Id.* at 2–3. Furthermore, Showtime seeks recovery of all amounts due by Blockbuster on Showtime's accounts. *Id.* at 4.

Blockbuster removed the action to this Court on May 13, 1993, pursuant to 28 U.S.C. § 1441 *et seq.* and then filed its motion to dismiss on July 1, 1993, alleging that under Rule 12(b)(7), Showtime failed to join a necessary party under Rule 19. *See* Def.'s Mot. to Dismiss. Blockbuster claims that under the tests set forth in Rule 19(a) and (b) of the Federal Rules of Civil Procedure, Pacific is

---

1. Showtime's Memorandum states that its relationship with Pacific began in November, 1991, *See* Amended Memorandum, at 1, however, that cannot be correct because Showtime later refers to dealings between both parties in March, 1991. *Id.* at 2. Therefore, the Court assumes that Showtime was referring to November, 1989.

an indispensable party to this action; thus, Showtime's failure to join Pacific is grounds for dismissal under Rule 12(b)(7). *See* Def.'s Br. In Supp., at 9.

## DISCUSSION

Rule 12(b)(7) allows a plaintiff to move for dismissal of an action where the defendant has failed "to join a party under Rule 19." Fed.R.Civ.Proc. 12(b)(7). Rule 19, in relevant part, states:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

(b) **Determination by the Court Whenever Joinder is not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether

the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.Proc. 19(a)-(b).

Rule 19 involves a two-prong test to determine whether a party is to be joined: "[f]irst, is the absent party a person 'to be joined if feasible'; and, second, if not feasible should the court in equity and good conscience allow the action to proceed or treat the absent party as indispensable." *Le Beau v. Libby–Owens–Ford Company,* 484 F.2d 798, 800 (7th Cir.1973). In *Le Beau,* the Seventh Circuit outlined the analysis that a district court should follow under Rule 19:

The desirability of joining a party depends on whether (1) complete relief can be granted in his absence; and (2) whether his interests will be prejudiced or those already parties will be subjected to a substantial risk of incurring double or inconsistent obligations. When joinder is desirable but not feasible, the Rule provides criteria for determining whether the suit should be dismissed; the possible prejudice to the absent person or to those who are parties resulting from the entry of judgment; the possibility of shaping relief to avoid such prejudice; the adequacy of the judgment entered in the person's absence; and the alternatives that are available to the complainant if the action is dismissed for nonjoinder.

*Id.* at 800. The Rule should be applied with proper consideration to the specific facts of each case. *Id.* The first step in this inquiry is whether under Rule 19(a) Pacific is a party to be joined if feasible.

### 1. *Rule 19(a)*

Under Rule 19(a), Pacific shall be joined if either: (1) "complete relief cannot be accorded among those already parties" to the action, or (2) Pacific "claims an interest relating to the subject matter of the action and is so situated that the disposition of the action" in Pacific's absence may "impair or impede" Pacific's ability to protect that interest, or "leave any of those persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed.R.Civ.Proc. 19(a).

#### a. *Complete Relief*

Under Rule 19(a)(1), the term "complete relief" refers only to the court granting relief to the parties and not relief between a party and the absent person. *Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 937 (7th Cir.1993). Therefore, the question becomes whether this court may grant Showtime and Blockbuster complete relief without the presence of Pacific. The answer is no.

In determining whether this Court may accord complete relief between the parties to this action, the Court must consider the effectiveness that a judgment for either party will have in terminating the controversy. *See e.g., Evergreen Park Nursing and Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115 (7th Cir.1969) (finding that a court may consider the public's interest in avoiding multiple litigation on the same issues when determining whether or not to join a necessary party.)

Without joining Pacific, any decision that the Court makes will not effectively resolve the controversy between the parties. If Showtime prevails in this action, then Blockbuster will incur double liability and be forced to sue Pacific for a refund. Likewise, if Blockbuster prevails, then Showtime will have to sue Pacific for the balance due on the invoices. Furthermore, even if the Court reduces Showtime's claim by $100,002.17—the commissions paid by Pacific to Showtime in satisfaction of the invoices in dispute—there is a strong likelihood that the nonprevailing party will file suit against Pacific to recover the difference. Therefore, the Court finds that it cannot accord either of the parties to this action complete relief without the presence of Pacific. Pacific's joinder serves this Court's interests in avoiding multiple litigation on essentially the same issues and rendering a judgment that will resolve the controversy as to all interested parties. Pacific should be joined to resolve the controversy in one forum.

#### b. *Interested Party*

The Court reaches the same result under Rule 19(a)(2). That provision requires that Pacific have an "interest relating to the subject matter" of the action. Fed.R.Civ.Proc. 19(a)(2). "The general policy of Rule 19, as with the Federal Rules of Civil Procedure in general, is 'toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged.'" *Mayer Paving & Asphalt Co. v. General Dynamics Corp.,* 486 F.2d 763, 771 (7th Cir.1973) (citations omitted). In *Mayer,* the court found that where the "disposition of the action may collaterally affect the [absentee's] rights," the absentee is an interested party. *Id.* at 771. In that case the absentee was a successor in interest to the defendant and thus faced a substantial risk of incurring an obligation as a result of the action. *Id.*

Few courts have analyzed the meaning of "interest" under Rule 19(a)(2), however. *See e.g., Burger King Corp. v. American National Bank and Trust Co. of Chicago,* 119 F.R.D. 672 (N.D.Ill.1988). Within the Seventh Circuit, no court has addressed the issue as thoroughly as the district court in *Burger King.* There, the court found:

> [that] the striking paucity of analysis focusing on the 'subject matter' prong of the 'interest relating to the subject matter of the action' requirement ... [exists because] [i]n most cases this poses no problems: If the absent party has a legally protected interest *in* the subject matter of the action—i.e., he is a party to a contract at issue—he falls squarely within the terms of Rule 19(a)(2).

*Id.* at 675 (emphasis in original). Pacific clearly falls within Rule 19(a)(2). *See Id.* Both parties admit that Pacific was a party in some respect to the contract for the sale of goods at issue in this action. *See* Def.'s Br. In Supp. at 1; *see also* Amended Memorandum at 2.

However, where the party's interest in the subject matter of the action is not so obvious, the analysis should focus on the part of the Rule that states that a party must "have an interest *relating* to the *subject matter* of the action," not necessarily *in* the action itself. *Burger King,* 119 F.R.D. at 676 (emphasis in original). Therefore, where "ownership interest ... in personal property ... is at issue, any party with a (claim to a)

legally protected interest in the property is a potential Rule 19(a) party." *Id.*

In this case, Pacific has a legally protected interest in the amount in controversy because Pacific already holds the funds at issue, and the amount that Pacific will eventually retain will be determined by the outcome of this action. Under this analysis, the case of *William Chris Trucks v. First Canadian Bank,* 98 F.R.D. 584 (N.D.Ill.1983), cited by both parties, is instructive. *See* Def.'s Br. In Supp. at 5; *see also* Mem. In Opp'n To Def.'s Rule 12(b)(7) Mot., at 7 [hereinafter Mem. In Opp'n]. There, the plaintiff, William Chris Trucks, entered into a contract for the sale of equipment with Morcam, a foreign corporation. According to the terms of the contract, plaintiff would deposit $150,000 in an escrow account as an assurance that it would complete the purchases agreed to or otherwise forfeit the deposit. Morcam then withdrew the funds from the bank without the prior authorization or knowledge of plaintiff. Plaintiff claimed that the withdrawal was a breach of contract because Morcam did not perform its bargain under the sales agreement. However, plaintiff also filed suit against the bank alleging breach of fiduciary duty. The bank moved to dismiss for plaintiff's failure to join Morcam. The court held that in Morcam's absence complete relief could not be accorded among the parties and that proceeding with the action would impair Morcam's ability to protect its interests in the subject matter of the action. *Id.* at 585. The court found that the subject matter of the lawsuit was the $150,000 deposit at the bank. Therefore, Morcam's ability to retain any part of that fund depended on the outcome of the action against the bank. Furthermore, the court stated: "if this Court rendered a judgment adverse to the bank, the bank has indicated that it would set off any funds Morcam might have on deposit with the bank. Litigation between Morcam and the bank undoubtedly would ensue...." *Id.* at 587. Therefore, in the interest of all concerned parties, the court found that Morcam's joinder was indispensable. *Id.*

Likewise, in this matter the subject of the action is the $254,040.28 fund representing the invoices for products sold to Blockbuster by both Showtime and Pacific during June–July, 1989. Presently Pacific controls the funds in question. The outcome of this action will affect Pacific's ability to retain any portion of that fund, and litigation will ensue after this Court renders its judgment. Therefore, Pacific has an interest relating to the subject matter of this action.

Rule 19(a)(2) requires that in addition to having an interest relating to the subject matter of the action, the interested party's absence must either (i) impair or impede that party's ability to protect their interest or "(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." Fed.R.Civ.Proc. 19(a)(2) (emphasis added). Here, the Court has already found that Blockbuster has a substantial risk of incurring double liability. It is uncontroverted that Blockbuster has already paid for the products; the only issue here is whether Blockbuster paid the right party. Therefore, if Showtime prevails in this action, Blockbuster will incur double liability. Furthermore, if Blockbuster sues Pacific to recover its money, it is possible that Pacific may prevail, and Blockbuster will have inconsistent judgments.

Rule 19 is designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations. Moreover, the public and the courts have an interest in an effective and expeditious resolution of cases. 7 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 1602, at 20 (1986). In accordance with the language of Rule 19(a) and the purposes behind the Rule, the Court concludes that Pacific is a party to be joined if feasible.

### c. *Feasibility of Joinder*

Feasibility of joinder under Rule 19 refers to "a person who is subject to service of process" within this Court's jurisdiction and "whose joinder will not deprive the court of jurisdiction over the subject matter of the action." Fed.R.Civ.Proc. 19(a). This Court has diversity jurisdiction over the subject

matter of this action. Therefore, the joinder of Pacific cannot destroy such diversity.

■ Blockbuster claims that Pacific, a Washington corporation, would not destroy this Court's diversity jurisdiction were it joined as a defendant. Def.'s Br. In Supp., at 1. Showtime claimed that it was "currently unaware of the state of incorporation of Pacific and, therefore ... [could not] determine whether its joinder would oust this Court of diversity jurisdiction." *See* Mem. In Opp'n, at 8. However, Showtime admits in its factual summary that Pacific is from "Vancouver, Washington." *See* Amended Memorandum, at 1. The Court concludes that Pacific, as a Washington Corporation, is a citizen of Washington and may be joined without divesting this Court of diversity jurisdiction over the subject matter of this action.

■ The last factor to be considered under Rule 19(a) is whether Pacific is subject to service of process within this Court's jurisdiction. "A federal district court sitting in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which the district court sits would have personal jurisdiction." *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990); *see also* Fed. R.Civ.Proc. 4(e). Therefore, the issue is whether an Indiana state court would have jurisdiction over Pacific. The question of personal jurisdiction over a nonresident defendant involves a two-step inquiry: (1) whether the Indiana long-arm statute subjects Pacific to personal jurisdiction, and (2) "whether the exercise of jurisdiction" over Pacific "under the long-arm statute runs afoul of the due process requirements of the Fourteenth Amendment." *Id.* at 1216.

■ The Indiana long-arm statute provides in part that:

(A) **Acts Serving as a Basis for Jurisdiction.** Any person or organization that is a nonresident of this state, ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing business in this state;

. . . .

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

. . . .

Ind.R.Trial Proc. 4.4(A)(1), (4). The purpose of the statute is to "extend jurisdiction to the boundaries permitted by the due process clause of the 14th Amendment of the United States Constitution." *Freemond v. Somma*, 611 N.E.2d 684, 688 (Ind.App. 1 Dist.1993).

■ Showtime admits that it entered into a business agreement with Pacific beginning in November, 1989, whereby Showtime would be the "middleman between Blockbuster and Pacific." *See* Mem. In Opp'n, at 1. In addition, Showtime agreed to pay Pacific a commission on all the sales made by Showtime to Blockbuster. *Id.* The Court finds that such a business agreement, under Indiana's long-arm statute, *supra*, subjects Pacific to personal jurisdiction. Even if this basis for personal jurisdiction does not exist, Showtime states that "[t]hrough the course of dealing, Blockbuster agreed to pay Showtime for product received from Showtime, *which originated* from Pacific and *other suppliers.*" *Id.* at 2 (emphasis added). The Court finds that Pacific was a supplier of goods "to be furnished in this state" and is subject to the long-arm statute of Indiana.

■ The second step in the personal jurisdiction inquiry is whether this Court's exercise of personal jurisdiction over Pacific would offend the Due Process Clause of the Fourteenth Amendment of the United States Constitution. To accord with constitutional requirements regarding personal jurisdiction over a nonresident defendant, Pacific's actions must meet the "minimum contacts" test set forth by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Pacific's contacts with Indiana must be such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158. A court's exercise of personal jurisdiction over a nonresident defendant will not offend notions of fair play and substantial justice when the Defendant's actions are such that he

should reasonably anticipate being subject to suit in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Furthermore, a defendant should reasonably anticipate being subject to suit in a state where the defendant has purposefully availed himself of the privilege of conducting business activities within that state and invoked the benefits and the protection of that forum's laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In *Hartwig, supra,* the Seventh Circuit held that the solicitation of a contract with a resident of the state and the creation of a continuing contractual relationship between the resident and the party to be joined were sufficient for that party to foresee being subject to personal jurisdiction in the forum. *Hartwig,* 913 F.2d at 1218. The court concluded that subjecting the foreign party to personal jurisdiction was consistent with due process. *Id.* The court in *Hartwig* also emphasized that most of the contract was to be performed in the forum state, thereby establishing a "substantial amount of contact in the forum state." *Id.* at 1219.

■■■ The Court finds that Pacific's joinder would not run afoul of the due process requirements of the Fourteenth Amendment. First, it is undisputed that Pacific solicited the agreement between Showtime and Pacific. According to Blockbuster, it first established a relationship with Pacific, and then, Pacific established a relationship with Showtime. *See* Def.'s Br. In Supp., at 1. Showtime also states that Pacific approached it with an "offer to sell Showtime's products to Blockbuster at certain specified prices." *See* Amended Memorandum, at 2. Second, Showtime admits that this was a continuing relationship until the events of June, 1991. *Id.* In conclusion, Pacific purposefully availed itself of the benefits and protection of Indiana law, actively solicited business within the state, and created a continuing relationship between Showtime, a resident of Indiana, and itself. Consequently, this Court's exercise of personal jurisdiction over Pacific is consistent with the Due Process requirements of the Fourteenth Amendment

of the United States Constitution. Furthermore, because a substantial part of the events giving rise to this action occurred within this State, venue in this action is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(a).

#### d. *Order to Join*

■■■ Showtime argues that this action should not be dismissed because under Rule 19(b) Pacific is not an "indispensable" party and in "good conscience and equity" this Court can proceed with this action even in Pacific's absence. *See* Mem. In Opp'n, at 8. However, in light of this Court's findings that Pacific is a necessary party under Rule 19(a), and that joinder of Pacific is feasible, the Court holds that Pacific must be joined without any need to address the Rule 19(b) factors. Rule 19(a) clearly states that if a person whose joinder is desirable under the tests of the Rule—a person in whose absence complete relief cannot be accorded to the parties in the action or who holds an interest in the action that may expose a party in the action to double liability—"has not been so joined, the court shall order that the person be made a party." Fed.R.Civ.Proc. 19(a). Furthermore, Rule 19(b) applies only when "a person as described in (a)(1)–(2) hereof *cannot* be made a party." Fed.R.Civ.Proc. 19(b) (emphasis added). Therefore, "[o]nly where joinder is not feasible must the court proceed under Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party." *English v. Seaboard Coast line R.R.,* 465 F.2d 43, 48 (5th Cir. 1972). In *English,* the court stated that the remedy under Rule 19(a) "is joinder by the order of the court." *Id.* at 47. In that case, the court of appeals reversed the district court's decision to stay the action until joinder occurred, holding that:

> [w]hen the court decides under Rule 19(a) that a person should be joined the court should direct the plaintiff to amend his complaint to add the person. Failure to comply with such an order may result in dismissal of the plaintiff's action.... Dismissal under Rule 19 is proper only after it is shown that a 19(a) party *cannot* be joined....

*Id.* at 47–48 (emphasis in original); *see also International Union of Operating Eng'r, Local 103, AFL–CIO v. Irmscher & Sons, Inc.,* 63 F.R.D. 394, 397 (N.D.Ind.1973) (holding that "where it is possible to join an absent, necessary party, dismissal is not the proper remedy.").

While this Court can only speculate as to the possible causes of action that Showtime may have against Pacific, contract actions must be brought within six (6) years after the action accrues. *See* Ind.Code § 34–1–2–1 (1988). Hence, Showtime may still file suit against Pacific for actions arising out of the events of 1989.

### CONCLUSION

For the reasons stated above, the Court denies Blockbuster's Motion To Dismiss and orders Showtime to join Pacific in this action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Showtime is hereby granted leave to amend its Complaint to comply with the terms of this Entry. However, if Showtime fails to join Pacific in this action within Forty–Five (45) days of this Entry, Showtime's Complaint shall be dismissed pursuant to Rule 12(b)(7).

It is so ORDERED.