**BRYAN MANUFACTURING COMPANY, Appellant (Plaintiff Below),**

v.

**Allen and Beaty HARRIS and Leonard and Eleanor Harris, Appellees (Defendants Below).**

No. 2-883A306.

Court of Appeals of Indiana, Second District.

Feb. 20, 1984.

Ronald J. Ehinger, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Patrick McFarland, Hirsh, Pannos, Mindel & Schmidt, Merrillville, for appellees.

RATLIFF, Judge (writing by designation).

## STATEMENT OF THE CASE

In an action for breach of contract initiated by Bryan Manufacturing Company, the White Circuit Court dismissed the complaint on grounds it lacked personal jurisdiction over the defendants. The plaintiff now appeals.

We reverse and remand.

## FACTS

The plaintiff, an Ohio corporation with its principal office in Michigan, contracted with the defendants, all residents of Illinois, for the sale of a parcel of real estate located in White County, Indiana. The contract, dated August 7, 1981, provided among other things, that each of the couples would possess an undivided half interest in the property as joint tenants. When the contract was executed, however, only Allen and Leonard affixed their signatures.[1]

Prior to the execution of the contract, Allen and Leonard viewed the premises twice and three times respectively. The two made at least one of these visits together when they purchased some scrap metal located on the property for use in their business in Illinois. In addition, Leonard appeared before the Monticello Common Council to seek approval of a bond issue relating to the property. Neither Beaty nor Eleanor ever visited the property.

After making an initial $14,000 down payment, the defendants refused to pay the balance of $126,000. The plaintiff then brought this action seeking specific performance.

## ISSUES

The issues presented for review consist of the following:

1. Did the defendants, by contracting to purchase real property in this state, acquire an interest therein sufficient to subject themselves to the personal jurisdiction of this state's courts pursuant to Indiana Rules of Procedure, Trial Rule 4.4(A)(5)?

2. Were the defendants doing business in this state when they contracted in

1. The contract was negotiated through an Illinois real estate agent and executed in that state.

Illinois to purchase real property in Indiana so as to confer personal jurisdiction upon the White Circuit Court under Indiana Rules of Procedure, Trial Rule 4.4(A)(1)?

3. Were Allen and Leonard Harris acting as agents for their wives Beaty and Eleanor Harris when they signed the contract to purchase real property located in White County, Indiana?

## DISCUSSION AND DECISION

### Issue One

The plaintiff first argues the defendants were subject to the personal jurisdiction of the White Circuit Court because their contract to purchase real property in that county made them equitable owners and thus gave them an "interest" in the property as that term is used in Trial Rule 4.4(A)(5).[2] We agree.

In *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641, *cert. denied*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974), our supreme court held that at the moment a contract for the sale of land is consummated, equitable title to the property vests in the buyer. *Id.* at 234, 301 N.E.2d at 646. As equitable owner, the court stated, the buyer assumes any risk of loss, is the recipient of any appreciation in value, and is responsible for any taxes. *Id.* In contrast, the court found, the seller merely retains the title as a security interest. *Id. See also, Ridenour v. France*, (1983) Ind.App., 442 N.E.2d 716; *Reynolds v. Milford*, (1978) 176 Ind.App. 336, 375 N.E.2d 265; *Finley v. Chain*, (1978) 176 Ind.App. 66, 374 N.E.2d 67, *rev'd on other grounds, Morris v. Weigle*, (1978) 270 Ind. 121, 383 N.E.2d 341.

■ While we recognize all of these cases involved real estate sold on a conditional sales contract, we believe they are sufficiently analogous to the instant case to support the conclusion that the defendants acquired an interest in the property as contemplated by Trial Rule 4.4(A)(5). Upon consummation of the contract, the defendants paid 10% of the $140,000 purchase price and agreed to submit the balance at the closing. At this juncture the provisions of the contract were certain and definite in every respect and capable of being performed by the parties. Thus, had the plaintiff refused to convey title to the defendants, they certainly would have possessed an interest sufficient to support an action for specific performance. *Ridenour*, 442 N.E.2d 716, 718; *Spoden v. Krause*, (1946) 117 Ind.App. 14, 68 N.E.2d 654, 656. Conversely, we believe their interest as equitable owners was sufficient to satisfy the requirements for personal jurisdiction under Trial Rule 4.4(A)(5).

This finding notwithstanding, the crucial question is whether the defendants' interest in the real estate and their related contacts with this state were sufficient to satisfy due process. *Condos v. Sun State Painting, Inc.*, (1983) Ind.App., 450 N.E.2d 86, 88; *Tietloff v. Lift-A-Loft Corp.*, (1982) Ind.App., 441 N.E.2d 986, 988. In other words, did the defendants have sufficient "minimum contacts" with Indiana to subject them to the personal jurisdiction of our courts. *International Shoe Co. v. Washington*, (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102.

Within the context of Trial Rule 4.4(A)(5), this precise question has not been addressed by our courts. However, we recently discussed the requirements of due process as they apply to the long-arm rule generally in the case of *Tietloff*.

"To exercise jurisdiction consonant with due process over a non-resident [sic] defendant, 'certain minimum contacts' must exist between the non-resident [sic] defendant and the forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington*[,] (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, [102],

---

2. This rule subjects nonresidents to the jurisdiction of our courts for acts of: "(5) owning, using, or possessing any real property *or an*

*interest* in real property within this state". Trial Rule 4.4(A)(5) (emphasis supplied)."

quoting *Milliken v. Meyer*[,] (1940) 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278. A mechanical or quantitative evaluation of a defendant's activities in a state cannot resolve the question of the reasonableness of the exercise of personal jurisdiction. Rather, it depends upon the quality and nature of the defendant's activity in relation to the matter under litigation. *Hutson v. Fehr Bros.*, (8th Cir.1978) 584 F.2d 833 (construing Arkansas law). The facts of each case must be weighed. At a minimum, the court must find 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla* [,] (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. The inquiry focuses not only upon the quantity, quality and nature of the defendant's activities but also upon the relationship of those activities and the forum. *Rush v. Savchuk*[,] (1980) 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516; *Kulko v. California Superior Court*[,] (1978) 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132; *Shaffer v. Heitner*[,] (1977) 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. The focus is on the defendant's activities within the forum state, not on those of the plaintiff. *World Wide Volkswagen v. Woodson*[,] (1980) 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490."

*Id.* at 989. Mindful that the test for due process is one which is, "necessarily, fact sensitive", *Condos* at 89, and that the purpose of the rule is to expand personal jurisdiction to its fullest extent, *Griese-Traylor Corp. v. Lemmons*, (1981) Ind.App., 424 N.E.2d 173, 180, *trans. denied,* we turn now to several cases from other jurisdictions which lead us to believe the contacts were sufficient.

In *Dwyer v. District Court, Sixth Judicial District*, (1975) 188 Colo. 41, 532 P.2d 725, the Colorado Supreme Court held that its courts had personal jurisdiction over a nonresident defendant who contracted with a Colorado resident for the purchase of land in that state and subsequently breach-ed. While the contract was executed in Texas, the court noted that as equitable owner of the property, the defendant had "substantially enhance[d] [his] contact with this state". *Id.* at 45, 532 P.2d at 727. The court continued:

"Upon execution of the contract, Dwyer became entitled to many significant protections afforded by the laws of this state to owners of realty. Discussing this precise situation, the Supreme Court of Appeals of Virginia in *Carmichael v. Snyder*, [ (1968) ] 209 Va. 451, 164 S.E.2d 703, stated:

'The contract clothed Snyder with an equitable estate or interest in the land he agreed to purchase from plaintiffs, thereby entitling him to the protection of the laws of this state and the machinery which is provided incident to real estate transactions. These laws include the recording statutes; procedures to remove clouds on titles, quiet title to land, establish boundary lines; the zoning statutes and numerous others. Had plaintiffs refused to convey the property in accordance with their contract, defendant could have enforced specific performance. Had defendant decided to cancel, reform, or rescind his contract, a forum would have been provided for him to seek such relief.' 164 S.E.2d at 706."

*Id.* at 45–06, 532 P.2d at 727–28. *Compare Associates Financial Services of Oklahoma, Inc. v. Kregel,* (1976) Okla.Ct.App., 550 P.2d 992 (held that nonresident defendant's execution of notes and mortgages in Texas for purchase of Oklahoma real estate constituted sufficient minimum contacts with that forum to subject him to personal jurisdiction of Oklahoma courts).

Likewise, the Georgia Court of Appeals held that the mere execution of a note by nonresident defendants in the purchase of Georgia real estate constituted sufficient minimum contacts. *Hart v. DeLowe Partners, Ltd.,* (1978) 147 Ga.App. 715, 250 S.E.2d 169. Without revealing where the note was executed, the court concluded: "Since the note was executed by the non-

resident purchasers with knowledge that the note would be used in conjunction with, and an integral part of, a Georgia real estate transaction, a substantial enough connection with this state existed so as to make the exercise of jurisdiction over the nonresident defendants reasonable". *Id.* at 717, 250 S.E.2d at 171.

In the instant case, we believe the defendants had sufficient minimal contacts with Indiana to justify the exercise of personal jurisdiction over them by our courts. Although the contract was negotiated and executed in Illinois, it pertained to the purchase of real property within this state. In addition, both Allen and Leonard Harris came to this state on several occasions to inspect the property, and Leonard even appeared before the Monticello Common Council to seek a bond issue relative to the property. Moreover, upon consummation of the contract, the defendants became equitable owners of the property and were, therefore, entitled to all the rights and *responsibilities* as such. *See Carmichael v. Snyder,* (1968) 209 Va. 451, 455, 164 S.E.2d 703, 706.

■ Finally, we do not believe the fact that the plaintiff is a nonresident is of any import. Just as Indiana has "a manifest interest in providing effective means of redress for its residents", *McGee v. International Life Insurance Co.,* (1957) 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226, we believe this state has an important interest in providing redress for owners of real property in this state regardless of their residence status.

■ Correspondingly, we believe the defendants, in light of their contacts with this state, may not now escape the jurisdiction of Indiana courts. As the Supreme Court noted in *International Shoe,* in the context of nonresident corporate defendants:

"[To] the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits

and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

*Id.* 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. Likewise, in the present case, the defendants may not contract to purchase property in this state, become entitled to all the rights and privileges as an equitable owner, and then deny they had the necessary minimal contacts when certain responsibilities as property owners are asserted against them. We therefore conclude the defendants had the requisite minimum contacts with this state necessary to satisfy the due process clause and subject them to the personal jurisdiction of our courts.

*Issue Two*

■ The plaintiff next argues the defendants' negotiation and execution of the contract to purchase real estate constituted "doing business" in this state, thus subjecting them to personal jurisdiction under Indiana Rules of Procedure, Trial Rule 4.4(A)(1).[3] While we disagree and premise our reversal solely upon the finding that the defendants possessed an interest in real estate, we will address this issue briefly.

We have frequently addressed the issue of personal jurisdiction over nonresident defendants on the basis of their business activities within this state. *E.g. Condos v. Sun State Painting, Inc.,* (1983) Ind.App., 450 N.E.2d 86; *Woodmar Coin Center, Inc. v. Owen,* (1983) Ind.App., 447 N.E.2d 618, *trans. denied; Tietloff v. Lift-A-Loft,* (1982) Ind.App., 441 N.E.2d 986. However, in the cases in which jurisdiction was established, the defendants' activities were both more substantial and more clearly business related than those of the defendants in the instant case.

**3.** This subsection of the rule confers personal jurisdiction over nonresident defendants "doing

any business in this state". Trial Rule 4.4(A)(1).

In *Griese-Traylor Corp. v. Lemmons,* (1981) Ind.App., 424 N.E.2d 173, *trans. denied,* we found personal jurisdiction over a nonresident corporate defendant to exist essentially on the basis of a single purchase of the stock of an Indiana corporation. Despite the defendant's claim that this single transaction was insufficient evidence of "doing business", we found:

> "[M]aintenance of the instant suit in an Indiana court does not offend traditional notions of fair play and substantial justice. Acting in this state in the capacity of a corporate officer, Traylor negotiated and facilitated the execution of a contract for the sale and purchase of an Indiana corporation from residents of this state. The contract expressly provides it 'shall be governed by and construed in accordance with the internal laws of the State of Indiana.' The stock was transferred in this state, consulting services were rendered here, and partial payment, both lump sum and periodic, was made in this state. We find Griese-Traylor purposely availed itself of the privilege of doing business in this state...."

*Id.* at 181.

Likewise, in *Suyemasa v. Myers,* (1981) Ind.App., 420 N.E.2d 1334, we held a nonresident defendant's conduct consisting of visits to the homes of several Indiana residents to solicit stock purchases constituted doing business in this state despite the fact the defendant did not maintain an office in Indiana. We summarized the defendant's activities in these terms:

> "The assertion of jurisdiction over Myers does not offend due process. It is not predicated on the unilateral activity of the appellants, but on the purposeful conduct of Myers. While physically present in Indiana, he discussed the sale of the stock with the appellants, negotiated the terms of the contract, and offered to sell the stock to the appellants. Myers, by these acts done in Indiana, purposely availed himself of the privilege of conducting business activities within this state".

*Id.* at 1342. *Cf. Condos,* 450 N.E.2d 86 (applying Florida law, nonresident defendant's business activities within Indiana were insufficient to satisfy due process).

In the instant case, however, we do not believe there is any evidence that the defendants were conducting business when they contracted to purchase the real estate. In cases where a nonresident defendant is found to have conducted business within this state, it was conduct in furtherance of an ongoing business. Here, there is no evidence the defendants were furthering any business interest when they contracted to purchase the land. Furthermore, all of the negotiations pertaining to the purchase occurred in Illinois. Therefore, we fail to see how the defendants were in any way "doing business" in this state when they executed the contract.

*Issue Three*

Finally, the plaintiff argues that when Allen and Leonard Harris executed the contract, they not only signed on their own behalf, but as agents for their wives, Beaty and Eleanor as well. We need not address this issue, however.

Questions concerning the existence of an agency relationship are for the trier of fact, *McCormick Piano & Organ Co., Inc. v. Geiger,* (1980) Ind.App., 412 N.E.2d 842, 850; *Indiana Department of State Revenue v. Marsh Supermarkets, Inc.,* (1980) Ind.App., 412 N.E.2d 261, 268, and inasmuch as we must reverse and remand this cause, we will leave this question to the trial court. Likewise, should the trial court conclude there was no agency relationship, it is also within its purview to determine whether a valid contract existed between the plaintiff and Allen and Leonard Harris. Accordingly, we will refrain from addressing this issue as well.

Reversed and remanded.

BUCHANAN, C.J., and SHIELDS, J., concur.