SACKETT ENTERPRISES, INC., Plaintiff-Appellee, v. JOHN F. STAREN, Defendant-Appellant.

First District (1st Division) No. 1—89—1502

Opinion filed March 28, 1991.

998

Braun & Rivkin, Ltd., of Chicago (Lee M. Weisz, of counsel), for appellant.

Holleb & Coff, of Chicago (Howard J. Stein and Bradley S. Block, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant John Staren appeals an order of the circuit court of Cook County granting plaintiff Sackett Enterprises, Incorporated's

(Sackett's), petition to register a default judgment rendered against Staren in the circuit court of Gibson County, Indiana. For the reasons stated below, we affirm.

The record on appeal indicates the following. Defendant is a resident of Illinois. Plaintiff is the lessee of certain oil wells located in Indiana. In 1986, plaintiff solicited defendant by telephone and mail to invest in these oil wells. Face-to-face negotiations concerning this investment took place in Chicago, Illinois. Plaintiff and defendant entered into an agreement under which defendant received an undivided fractional interest in oil wells in Knox County, Indiana. Defendant's purchase of this interest was financed by a loan from an Illinois bank.

On August 1, 1986, plaintiff filed suit against defendant in the circuit court of Gibson County, Indiana, for services and expenses which were allegedly incurred in the operation of the oil wells. The trial court entered a default judgment of $19,365.18 against defendant on October 7, 1986.

Plaintiff then petitioned the circuit court of Cook County for registration of the Indiana judgment pursuant to section 12—602 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 12—602), which is also part of the Uniform Enforcement of Foreign Judgments Act (Foreign Judgments Act) (Ill. Rev. Stat. 1987, ch. 110, par. 12—617). Defendant contested the registration on the ground that the Indiana courts lacked jurisdiction over him. Following a hearing on the matter, the circuit court of Cook County granted plaintiff's petition.

Defendant now appeals, continuing to argue that the circuit court of Gibson County, Indiana, lacked personal jurisdiction over him, thus preventing the registration of the Indiana judgment.

A "foreign judgment" is defined as "any judgment, decree or order of a court of the United States or of any State or Territory which is entitled to full faith and credit in this state." (Ill. Rev. Stat. 1987, ch. 110, par. 12—601(a).) The purpose of the Foreign Judgments Act is to implement the full faith and credit clause of the United States Constitution. (*Ace Metal Fabricating Co. v. Arvid C. Walberg & Co.* (1985), 135 Ill. App. 3d 452, 481 N.E.2d 1066; *Ayers Asphalt Paving, Inc. v. Allen Rose Cement & Construction Co.* (1982), 109 Ill. App. 3d 520, 522, 440 N.E.2d 907, 909; *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 916, 385 N.E.2d 702, 705.) The Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." (U.S. Const., art. IV, §1.) The intended purpose of the full faith and credit clause is "to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the

judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." (*Milwaukee County v. M.E. White Co.* (1935), 296 U.S. 268, 277, 80 L. Ed. 220, 228, 56 S. Ct. 229, 234, cited in *Wisconsin v. Ubrig* (1984), 128 Ill. App. 3d 743, 745, 470 N.E.2d 1297, 1299.) The Uniform Enforcement of Foreign Judgments Act was adopted in Illinois to aid the enforcement of judgments across State lines. *Light v. Light* (1957), 12 Ill. 2d 502, 505, 147 N.E.2d 34, 37; *Brownlee v. Western Chain Co.* (1977), 49 Ill. App. 3d 247, 250, 364 N.E.2d 926, 928, *cert. denied* (1978), 435 U.S. 968, 56 L. Ed. 2d 59, 98 S. Ct. 1605.

■■■ "Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is *res judicata.*" (*All Seasons Industries, Inc. v. Gregory* (1988), 174 Ill. App. 3d 700, 703, 529 N.E.2d 25; *Thompson,* 67 Ill. App. 3d at 916, 385 N.E.2d at 705.) When a party seeks to register a foreign judgment in Illinois, however, the trial court may inquire into the proceedings of a sister State to determine whether the court had subject matter and personal jurisdiction. (*Ace Metal,* 135 Ill. App. 3d at 457, 481 N.E.2d at 1070; *Grant, Schon, Wise & Grant, P.C. v. R.W. Borrowdale Co.* (1983), 114 Ill. App. 3d 89, 92, 448 N.E.2d 574, 576; *Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 950, 388 N.E.2d 1003, 1005; *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 321, 302 N.E.2d 382, 385.) If this inquiry reveals a jurisdictional defect which would either render the foreign judgment void according to the law of the foreign State, or deprive the foreign court of jurisdiction over the nonresident under the general constitutional standards of due process, the foreign judgment has no constitutional claim to full faith and credit. *Grant, Schon, Wise & Grant,* 114 Ill. App. 3d at 92, 448 N.E.2d at 576; *Evans,* 70 Ill. App. 3d at 950, 388 N.E.2d at 1005, citing *Kolman v. National Racing Affiliates, Inc.* (1965), 64 Ill. App. 2d 61, 64, 212 N.E.2d 313, 315.

■ Nevertheless, a judgment rendered by a court of general jurisdiction of a sister State carries a strong legal presumption that the court had jurisdiction and that its proceedings conformed to the law of the State in which it was rendered. (*Ace Metal,* 135 Ill. App. 3d at 457, 481 N.E.2d at 1070; *Evans,* 70 Ill. App. 3d at 950-51, 388 N.E.2d at 1005; *Watts v. Barrett Industries Corp.* (1978), 59 Ill. App. 3d 1009, 1011, 376 N.E.2d 691, 692; *Nelson v. Sutton* (1924), 232 Ill. App. 93, 100.) In *Evans,* the court held that this presumption prevailed where the defendant failed by certain and positive averments to negate every fact from which the jurisdiction of the court could arise. *Evans,* 70 Ill. App. 3d at 951, 388 N.E.2d at 1006.

▐█ In determining whether an Indiana court has personal jurisdiction over a nonresident defendant, Indiana courts ask: (1) whether the Indiana long-arm statute authorizes the exercise of jurisdiction over the nonresident; and (2) whether the exercise of personal jurisdiction pursuant to the long-arm statute would violate the nonresident's due process rights under the fourteenth amendment to the United States Constitution. See *Reames v. Dollar Savings Association* (Ind. App. 1988), 519 N.E.2d 175; *Bryan Manufacturing Co. v. Harris* (Ind. App. 1984), 459 N.E.2d 1199.

The parties are in dispute as to whether defendant submitted himself to the jurisdiction of the Indiana courts pursuant to Indiana's long-arm statute (Ind. Rules of Procedure, Trial Rule 4.4(A)(Burns 1991)), which provides in relevant part:

"(A) Acts serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) Doing any business in this state;
* * *
(5) Owning, using, or possessing any real property or an interest in real property within this state * * *."

█ The courts of Indiana have often addressed the issue of personal jurisdiction over nonresident defendants on the basis of their business activities within Indiana. (*E.g., Condos v. Sun State Painting, Inc.* (Ind. App. 1983), 450 N.E.2d 86; *Woodmar Coin Center, Inc. v. Owen* (Ind. App. 1983), 447 N.E.2d 618; *Tietloff v. Lift-A-Loft Corp.* (Ind. App. 1982), 441 N.E.2d 986.) Although the purpose of the Indiana long-arm statute is to extend jurisdiction to the outer limits of due process (*Dura-Line Corp. v. Sloan* (Ind. App. 1986), 487 N.E.2d 469), Indiana courts generally seem to require that the act be "substantial" and "business related." See *Bryan Manufacturing*, 459 N.E.2d at 1203-04, discussing *Griese-Traylor Corp. v. Lemmons* (Ind. App. 1981), 424 N.E.2d 173 (stock transfer, consulting services and payments in Indiana to Indiana residents), and *Suyemasa v. Myers* (Ind. App. 1981), 420 N.E.2d 1334 (discussion of sale, negotiation and sale of stock to Indiana resident in Indiana).

In this case, defendant trades pork bellies on the Chicago Mercantile Exchange. The interest at issue here is the only oil investment held by defendant. Defendant was solicited by plaintiff and never visited Indiana in the course of negotiating the transaction. The agreement was negoti-

ated, executed and financed in Chicago. Telephone calls, by themselves, are not sufficient to fall within the "business" provision of the Indiana long-arm statute. See *Subacz v. Town Tower Motel Corp.* (N.D. Ind. 1983), 567 F. Supp. 1308 (interpreting similar provision of Michigan law).

We therefore consider whether defendant has submitted himself to the jurisdiction of the Indiana courts by owning, using or possessing real property or an interest therein in Indiana. The Indiana legislature has generally defined "real property" as including lands, tenements and hereditaments. Ind. Code Ann. §1—1—4—5 (Burns 1990).

■ The interest at issue in this appeal is a "working interest," which has been defined as the interest of the lessee under an oil and gas lease, *i.e.*, an undivided interest in the gas and oil produced on a given parcel of land (see *Williams v. Sohio Petroleum Co.* (1958), 18 Ill. App. 2d 194, 198, 151 N.E.2d 645, 647), but is also commonly used to denote a fractional portion of the oil and gas produced from a well after an amount (such as an "overriding royalty," "oil payment," "net profit interest" or "carried interest") is retained for the lessor. See *Illinois Natural Oil & Gas Co. v. Sinclair* (1940), 373 Ill. 581, 27 N.E.2d 450; 8 Williams & Meyers, Oil & Gas Law, Manual of Terms (1987 ed. & Supp. 1990).

■■ Our sister States classify "working interests" in a number of different ways for different purposes; Indiana generally classifies them as incorporeal hereditaments. (*Halbert v. Hendrix* (1950), 121 Ind. App. 43, 95 N.E.2d 221.) Moreover, the *Halbert* court held that an overriding royalty remains an incorporeal hereditament after the interest is divided. (*Halbert*, 121 Ind. App. at 48, 95 N.E.2d at 223.) A sublease or assignment of a fractional interest also retains its classification as a hereditament. (See 3 W. Summers, The Law of Oil & Gas §556, at 666 (1938 & Supp. 1990) ("In determining the nature of the interest ***, the courts have relied upon what has been held in the particular jurisdiction to be the nature of the lessee's interest").) Consequently, a "working interest" or a fractional interest thereof constitutes "real property" or an "interest in real property" under the laws of Indiana, thus placing defendant within the scope of Indiana's long-arm statute.[1] This conclusion is consistent with the decisions of other courts as to whether oil and gas royalties are considered real property for jurisdictional purposes.

[1]It appears that Gibson County, Indiana, is not the preferred venue for a claim involving real property located in Knox County; nevertheless, venue could be had in Knox County so long as the opposing party did not object to it. See Indiana Rules of Procedure, Trial Rule 75(A)(Burns 1991).

See *Fairbairn v. Eaton* (1935), 6 Cal. App. 2d 264, 43 P.2d 1113; *Echols v. Wells* (Tex. Civ. App. 1973), 508 S.W.2d 118, *rev'd on other grounds* (1974), 510 S.W.2d 916.

 ██ The ultimate issue, then, is whether the exercise of jurisdiction over defendant by the courts of Indiana offends the concept of due process of law guaranteed by the fourteenth amendment to the United States Constitution. Under the standard as elucidated by the United States Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, and its progeny, the defendant must have certain minimum contacts with the State so that the maintenance of a suit in that state does not offend "traditional notions of fair play and substantial justice."

In regard to the minimum contacts requirement, a mechanical, quantitative evaluation of a defendant's activities in a State is not determinative of the exercise of personal jurisdiction. Rather, it depends upon the quality and nature of the defendant's activity in relation to the matter in dispute and the relationship of those activities to the forum. (*Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571; *Kulko v. California* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569; *Reames*, 519 N.E.2d at 177-78.) At a minimum, the court must find an act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. (*Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.) The focus is on the defendant's activities within the forum State, not on those of the plaintiff. *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567.

 The presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. (*Reames*, 519 N.E.2d at 178.) When claims to the property itself are the source of the underlying dispute between the plaintiff and the defendant, it would be common for the State where the property is located to have jurisdiction; however, when claims to the property are not the underlying source of the controversy, the presence of the property alone will not support the State's jurisdiction unless other ties with the State exist. *Reames*, 519 N.E.2d at 178, discussing *Shaffer*, 433 U.S. at 207-09, 53 L. Ed. 2d at 699-701, 97 S. Ct. at 2581-82.

Thus, in *Bryan Manufacturing Co. v. Harris* (Ind. App. 1984), 459 N.E.2d 1199, the court found sufficient contacts to exercise jurisdiction over a nonresident defendant in a suit alleging breach of a real estate

sales contract. The court noted that the contract was for real property located in Indiana and after the contract was consummated, the defendant would acquire rights and responsibilities under Indiana law. The court concluded:

> "[D]efendants may not contract to purchase property in [Indiana], become entitled to all the rights and privileges as an equitable owner, and then deny they had the necessary minimal contacts when certain responsibilities as property owners are asserted against them." *Bryan Manufacturing Co.*, 459 N.E.2d at 1202-03.

By contrast, in *Reames*, the court held that it had no personal jurisdiction where plaintiffs sought no determination regarding either the ownership of the land or the rights and responsibilities of the parties under the mortgage instrument itself. The court also noted that the contract in that case was negotiated and executed in Pennsylvania, and defendant's only action in Indiana regarding the mortgage in the case was a brief visit to the Clark County property which lasted a couple of hours. (*Reames*, 519 N.E.2d at 175.) The *Reames* court distinguished *Bryan Manufacturing Co.*, noting that the underlying source of the controversy in *Bryan* was the land itself and the nonresident purchaser therefore was held to have contacts sufficient to satisfy the due process test. (*Reames*, 519 N.E.2d at 178.) Such a limitation is entirely consistent with the plain language of Trial Rule 4.4(A) itself, which refers to suits "arising from" the enumerated list of acts.

▪ In this case, defendant established minimum contacts with Indiana, because the underlying source of the dispute is a "working interest," which we have concluded falls within the definition of "real property" or an interest therein under Indiana law.

▪ Having decided that defendant purposefully established minimum contacts with the forum, we then evaluate those contacts in light of other factors to determine whether the exercise of personal jurisdiction comports with the notions of "fair play and substantial justice." These other factors are:

> "The burden on the defendant ***; the forum State's interest in adjudicating the dispute ***; the plaintiff's interest in obtaining convenient and effective relief ***; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental social policies [citations]." (*World-Wide Volkswagen Corp v. Woodson*, 444 U.S. at 292, 62 L. Ed. 2d at 498, 100 S. Ct. at 564.) (Citations omitted.)

These factors may support the exercise of personal jurisdiction where the showing of minimum contacts is questionable. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 477, 85 L. Ed. 2d 528, 543-44, 105 S. Ct. 2174, 2184.

In this appeal, these factors seem to favor the exercise of personal jurisdiction. Indiana has a clear interest in adjudicating disputes involving an Indiana resident and also involving Indiana law on some or many of the issues. (*Bryan Manufacturing Co.*, 459 N.E.2d at 1203-04.) Plaintiff also has a compelling interest in obtaining effective relief in a convenient forum. Consequently, the exercise of personal jurisdiction over defendants comports with due process.

In summary, defendant has failed to demonstrate that the Indiana courts lacked personal jurisdiction over him. For all of the reasons stated above, we affirm the decision of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.