**FIDELITY FINANCIAL SERVICES, INC.**
and Admiral Life Insurance Company of
America, Appellants–Defendants,

v.

Lewis WEST and Teresa West,
Appellee–Plaintiffs.

No. 10A01–9404–CV–126.

Court of Appeals of Indiana,
First District.

Sept. 15, 1994.

William E. Smith, III, Hanger, Engebretson, Mayer & Vogt, Clarksville, Kenneth R. Taurman, Jr., Tackett, Taurman & Sonne, P.C., New Albany, for appellants.

C. Gregory Fifer, Voelker Law Office, Jeffersonville, for appellees.

NAJAM, Judge.

## STATEMENT OF THE CASE

Fidelity Financial Services, Inc. ("Fidelity") and Admiral Life Insurance Company of America ("Admiral") bring this interlocutory appeal from the trial court's order denying their motion to dismiss the complaint of Lewis and Teresa West (the "Wests").[1] The Wests filed their complaint to establish liability on a credit disability insurance policy issued by Admiral as a condition of a loan between the Wests and Fidelity. In order to secure the loan, the Wests granted Fidelity a second mortgage on their home in Indiana. Thereafter, Fidelity and Admiral filed a motion to dismiss the Wests' complaint. The trial court denied Fidelity and Admiral's motion to dismiss but found that Fidelity had not been properly served. Fidelity and Admiral appeal and assert the trial court erred when it denied their motion to dismiss because, with regard to Fidelity, the trial court lacks personal jurisdiction and, with regard to Admiral, a more convenient forum exists. On cross-appeal, the Wests assert the trial court erred when it found that their service of process on Fidelity was insufficient.

We affirm in part, reverse in part and remand.

## ISSUE

We restate the issues presented on appeal as:

1. Whether the trial court erred when it denied Fidelity and Admiral's motion to dismiss the Wests' complaint.

2. Whether the trial court erred when it found the Wests' service of process on Fidelity was insufficient to confer jurisdiction.

## FACTS

On December 4, 1992, the Wests, who resided in Clark County, Indiana, went to Fidelity's office in Louisville, Kentucky, to apply for additional credit on a pre-existing loan. As a condition of the new loan, Fidelity required the Wests to obtain both a credit disability insurance policy and a joint credit life insurance policy from Admiral. Admiral's credit disability policy provided for a monthly benefit equal to the Wests' monthly loan payment to Fidelity, in the event Lewis West became disabled. That same day, at Fidelity's office, the Wests executed a promissory note with Fidelity and purchased the insurance coverage from Admiral. In addition, Fidelity required the Wests to execute a security agreement and to grant Fidelity a second mortgage on the Wests' home in Sellersburg to secure the loan. The mortgage was properly recorded in Clark County.

Shortly after the policies were issued, Lewis West became disabled. On February 8 and March 1, 1993, the Wests submitted claims on the credit disability policy for payment of benefits. Both claims were rejected by Admiral on the grounds that Lewis' disability was not covered by the policy. Admiral then notified Fidelity of its decision to reject the Wests' insurance claims.

The Wests brought suit against Fidelity and Admiral in the Clark Superior Court and alleged bad faith and the negligent practice of insurance. The Wests served Fidelity at its Louisville office "c/o Highest Executive Officer" and also served "Fidelity Financial Services, Inc., c/o William Thompson, Registered Agent, Indianapolis, Indiana." Record at 12 and 14. Both offices executed the

---

1. We have jurisdiction of this cause pursuant to Appellate Rule 4(B)(6).

certified mail return receipt; however, there was no return of service on Fidelity's Kentucky resident agent.

Fidelity and Admiral filed a motion to dismiss the Wests' complaint under Trial Rule 12(B) and alleged the following defenses: insufficient service of process, lack of personal jurisdiction, inconvenient forum and improper venue. After a hearing, the trial court entered an order denying their motion which stated in pertinent part:

> [T]he Court having now heard all the evidence and being duly advised in the premises, now FINDS as follows:
>
> 1. That the Defendant's Motion to Dismiss is hereby denied;
>
> 2. That the Court finds it has subject matter jurisdiction over the allegations contained in the Complaint;
>
> 3. That pursuant to Trial Rule 4.4 the Clark Superior Court Number 2 is the preferred venue for the above-styled cause of action;
>
> 4. That the Defendant, Fidelity Financial Services, Inc., a Kentucky Corporation, has not been properly served as of the date of this hearing, and therefore, there is presently no jurisdiction over said Defendant.

Record at 76–77. Fidelity and Admiral filed their petition for certification of interlocutory appeal with the trial court, which was granted, and then filed their petition to file an interlocutory appeal with this court, which we accepted. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Issue One: Motion to Dismiss

Fidelity and Admiral contend the trial court erred when it denied their motion to dismiss the Wests' complaint. Specifically, they assert the Wests' complaint must be dismissed because, even if Fidelity were properly served, the Clark Superior Court

lacks personal jurisdiction. In other words, they argue Fidelity is a Kentucky corporation without sufficient "minimum contacts" with Indiana. In addition, while Fidelity and Admiral concede that the trial court has personal jurisdiction over Admiral, they maintain the Wests' complaint should be dismissed because a more convenient forum exists in which to bring this action.[2] We disagree with both contentions.

### A. Personal Jurisdiction

■ "It is axiomatic that an Indiana court must have personal jurisdiction over a defendant in order to render a valid personal judgment against that defendant." *Freemond v. Somma* (1993), Ind.App., 611 N.E.2d 684, 687, *trans. denied.* In Indiana, jurisdiction is presumed and need not be alleged. Ind.Trial Rule 8(A). A party challenging jurisdiction must establish it by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Alberts v. Mack Trucks, Inc.* (1989), Ind. App., 540 N.E.2d 1268, 1270, *trans. denied.* The decision whether to grant a motion to dismiss based on lack of personal jurisdiction lies within the trial court's sound discretion. *Freemond,* 611 N.E.2d at 687. "As with any fact-finding entrusted to the trial court, it is within the trial court's sound discretion to decide the jurisdictional facts. Once the court has decided those facts, however, whether in personam jurisdiction exists is a question of law." *Id.*

■ In determining whether an Indiana court has personal jurisdiction over a nonresident defendant, we use a two-step analysis: (1) whether the Indiana long-arm statute authorizes the exercise of jurisdiction over the nonresident, and (2) whether the exercise of personal jurisdiction pursuant to the long-arm statute violates the nonresident's due process rights under the Fourteenth Amendment to the United States Constitution. *Reames v. Dollar Sav. Ass'n* (1988), Ind.

2. On appeal, Fidelity and Admiral both argue that the Wests' complaint must be dismissed because a more convenient forum exists in which to bring this action. However, pursuant to Trial Rule 4.4(C), a defendant may seek a more convenient forum only if the trial court has acquired personal jurisdiction over that defendant under Trial Rule 4. *Adams v. Budgetel Inns, Inc.* (1990), Ind.App., 550 N.E.2d 346, 348, *trans. denied.* Thus, because Fidelity contends the Clark Superior Court lacks personal jurisdiction over it, we will assume its assertion that a more convenient forum exists applies only if we first conclude the trial court has personal jurisdiction.

App., 519 N.E.2d 175, 176; *see Showtime Game Brokers, Inc. v. Blockbuster Video, Inc.* (1993), S.D.Ind., 151 F.R.D. 641, 648.

■ Indiana's "long-arm" statute provides, in relevant part, as follows:

**(A) Acts Serving as a Basis for Jurisdiction.** Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

\*  \*  \*  \*  \*  \*

(5) owning, using, or possessing any real property or an interest in real property within this state;

Ind.Trial Rule 4.4(A). The purpose of Trial Rule 4.4(A) is to extend jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment. *Fetner v. Maury Boyd & Associates, Inc.* (1990), Ind.App., 563 N.E.2d 1334, 1336, *trans. denied; Showtime Game Brokers*, 151 F.R.D. at 648.

The United States Supreme Court has interpreted due process as requiring certain "minimum contacts" between the defendant and the state before personal jurisdiction may be exercised by a court of that state. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Further, the Supreme Court has held that the defendant's contacts with the forum state must be such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.

In *Freemond*, we described the required due process analysis as follows:

A mechanical or quantitative evaluation of a defendant's activities in a state cannot resolve the question of the reasonableness of the exercise of personal jurisdiction. Whether exercising personal jurisdiction is reasonable depends upon the quality and nature of the defendant's activities in relation to the matter under litigation. The critical inquiry is whether the defendant's conduct and connection with the forum are such that the defendant should reasonably

anticipate being hauled into the distant forum court. *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498. At a minimum, the court must find 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.' *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298. The 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely on the basis of 'random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him.' *Burger King v. Rudzewicz* (1985), 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (citations omitted). The focus is on the defendant's activities within the forum state, not on the plaintiff's activities. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

*Freemond,* 611 N.E.2d at 688. Mindful that the test for due process is one which is "necessarily, fact sensitive," we must determine whether these criteria are met on the facts of the present case. *See Condos v. Sun State Painting, Inc.* (1983), Ind.App., 450 N.E.2d 86, 89.

### Trial Rule 4.4(A)(5)

■ The Wests contend the trial court has jurisdiction over Fidelity pursuant to a provision of Indiana's long-arm statute, Trial Rule 4.4(A)(5), because Fidelity's second mortgage on the Wests' home constitutes "an interest in real property within this state." We can find only one reported case in Indiana which has addressed whether a mortgage is a sufficient interest in real property to establish personal jurisdiction under T.R. 4.4(A)(5). In that case, *Reames v. Dollar Sav. Ass'n.* (1988), Ind.App., 519 N.E.2d 175, the majority opinion held that a mortgage is not a sufficient interest to sustain jurisdiction "when the property is not the basis of the action." We believe that the decision in *Reames* is erroneous and that T.R. 4.4(A)(5) should apply here.

In *Reames*, Reames and others brought a third-party complaint against Dollar Savings Association, a Pennsylvania institution, after an action had been brought against them in an Indiana court. That initial action against Reames and his partners was brought because they had guaranteed certain payments on a loan which Louisville Inn, an entity with which they all were associated, failed to make. As additional security for the loan, Dollar Savings had taken a second mortgage on certain real estate owned by Reames and located in Indiana. The contract was negotiated in Pennsylvania and, except for a brief visit to the property by Dollar's representatives, all aspects of the contract's formation took place outside of Indiana.

About ten months later, Dollar and Louisville Inn entered into a new agreement whereby Dollar would release its second mortgage on the Indiana real estate within five days after the Inn delivered over $1,000,-000 in cash and securities to Dollar. In their third-party complaint, Reames claimed that Dollar had failed to release the second mortgage after the Inn had performed as agreed and that Dollar's breach resulted in Reames potential liability to the original plaintiffs under the guaranty. In essence, Reames and his partners sought from Dollar "indemnity based on exposure to liability to other creditors." *Reames*, 519 N.E.2d at 178.

Thereafter, Dollar filed a motion to dismiss Reames' third-party complaint for lack of personal jurisdiction and the trial court granted the motion. On appeal, we affirmed the trial court's order dismissing the complaint for lack of jurisdiction over Dollar. *Id.* at 179. We reasoned in *Reames* that (1) a mortgage is not a sufficient interest in real property to sustain jurisdiction when the "property is not the basis of the action," (2) even if Dollar's interest was sufficient under T.R. 4.4(A) the contacts with Indiana would not meet the requirements of due process because "when claims to the property are not the underlying source of the controversy, the presence of the property alone will not support the state's jurisdiction," and (3) even if the "nonrelease of the mortgage [was] the catalyst" leading to the third-party complaint, "the mortgage itself was not the basis of the claim." *Id.* at 177–78. Thus, in *Reames*, this court concluded that because "Dollar's only contact with Indiana was the second mortgage and the release of that mortgage was only tangentially related to the cause of the action," the trial court lacked personal jurisdiction. *Id.* at 179.

We decline to follow the reasoning of the majority opinion in *Reames* that a mortgage is not a sufficient "interest in real property" to establish personal jurisdiction under T.R. 4.4(A)(5). Rather, in light of the United States Supreme Court decision in *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, we are persuaded that Judge Robertson's dissenting opinion in *Reames* is correct. *See* 1 W. HARVEY, INDIANA PRACTICE § 4.4.14 at 31 (Supp.1993). In his dissent, Judge Robertson looked to the purpose of the Indiana long-arm statute and wrote that the majority opinion's "interpretation of the phrase 'interest in real property' as it is used in T.R. 4.4(A)(5) is too narrow." *Reames*, 519 N.E.2d at 179 (Robertson, J., dissenting). He went on to conclude that "[s]ince T.R. 4.4(A)(5) places no restriction on the type of interest in real property necessary to obtain personal jurisdiction the lien aspect of a mortgage . . . is adequate when considered in the context and purpose of the rule." *Id.* We believe Judge Robertson's dissent is in accord with Supreme Court precedent on questions of jurisdiction and should be applied to the facts in the present case.

In *Burger King*, the Supreme Court emphasized that under due process analysis a contract is " 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545 (quoting *Hoopeston Canning Co. v. Cullen* (1943), 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777, 782). According to *Burger King*, in determining whether the defendant purposefully established minimum contacts with the forum state we must evaluate not only the terms of the contract but the "prior negotiations and contemplated future consequences" surrounding the contract. *Burger King*, 471

U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545. Thus, "[t]he due process question is the entirety of the associative facts between the defendant and the forum, not the specific claim which arises from some or all of those facts." 1 W. HARVEY, at 31–32.

Further, the majority in *Reames* distinguished the case of *Bryan Mfg. Co. v. Harris* (1984), Ind.App., 459 N.E.2d 1199, where we addressed whether a contract signed by non-residents to purchase real estate in Indiana was sufficient to invoke jurisdiction under T.R. 4.4(A)(5). There, we held that, as "equitable owners of the property," the nonresident defendants "had sufficient minimal contacts with Indiana to justify the exercise of personal jurisdiction over them by our courts" pursuant to T.R. 4.4(A)(5). *Id.* at 1203. However, the *Reames* majority distinguished *Bryan Mfg.* because in that case the "underlying source of the controversy was the land itself." *Reames,* 519 N.E.2d at 178.

The facts in *Reames* are not materially different from those in *Bryan Mfg.* As Professor Harvey has commented, "it was the failure to comply with the contract to buy the land which was the dispute among those parties" in *Bryan Mfg.,* and "their interest in the Indiana land provided minimum contacts and personal jurisdiction in Indiana." 1 W. HARVEY, at 31. Likewise, in *Reames,* the dispute between Reames and Dollar Savings "centered on the failure of the Pennsylvania defendant to remove a mortgage which it had contracted to do." *Id.* Accordingly, in both cases the "gist of the claim was of a breach or failure of contract [involving land in Indiana], and the interest in the land in Indiana was much more than enough for minimum contacts." *Id.*

Here, as in *Bryan Mfg.* and *Reames,* the underlying source of the dispute between the parties was a breach of contract "which had a substantial connection" with this state. *See Burger King,* 471 U.S. at 479, 105 S.Ct. at 2186, 85 L.Ed.2d at 545. The Wests entered into a contract for insurance with Admiral as an express condition to obtaining additional credit and a loan from Fidelity. Moreover, as security for the loan, the Wests were required to grant Fidelity a second mortgage on their home in Clark County. Thus, in a unitary transaction which took place at Fidelity's Louisville office, the Wests executed a promissory note and granted a second mortgage to Fidelity, and purchased credit insurance from Admiral. For minimum contacts analysis, the various components of the parties' transaction are indivisible. *See id.* at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545; 1 W. HARVEY, at 31–32.

In this case, while the transaction between the parties occurred in Kentucky, the loan, the contract for insurance and the second mortgage on the Wests' home bound persons and property located in Indiana. In no sense can the "quality and nature" of Fidelity's relationship with the Wests in Indiana be viewed as " 'random,' 'fortuitous,' or 'attenuated.' " *See Burger King,* 471 U.S. at 480, 105 S.Ct. at 2186, 85 L.Ed.2d at 545–46 (citations omitted). Rather, the "contemplated future consequences" surrounding the parties' transaction include the possibility that Fidelity may foreclose on the Wests' Clark County home if the Wests' cannot meet their obligations under the loan. *See id.* Fidelity actively negotiated for, obtained and recorded a second mortgage in Indiana to secure the loan. Therefore, because Fidelity "purposefully availed itself of the privilege of conducting business" within Indiana, Fidelity "should reasonably anticipate being subject to suit" in this state. *See id.*

We recognize that Fidelity neither has offices nor advertises in Indiana, that it does not have a resident agent in Indiana and that it is not licensed to transact business in Indiana. However, we believe that Fidelity, in light of its contacts with this state through their transaction with the Wests, "may not now escape the jurisdiction of Indiana courts." *See Bryan Mfg.,* 459 N.E.2d at 1203. Indiana has "a manifest interest in providing effective means of redress for its residents." *See id.* (quoting *McGee v. International Life Ins. Co.* (1957), 355 U.S. 220, 221, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226). Therefore, we conclude that Fidelity has sufficient minimum contacts with Indiana under T.R. 4.4(A)(5) to justify the exercise of personal jurisdiction over it by the Clark Superior Court.

## B. More Convenient Forum

Fidelity and Admiral next contend the trial court erred when it denied their motion to dismiss the Wests' complaint on the ground that a more convenient forum exists. Fidelity and Admiral assert that because "all contacts occurred in Kentucky and that the law of Kentucky will be applied in this case, it only makes sense to dismiss this case pursuant to T.R. 4.4(C), and allow the Plaintiff to refile the case in Kentucky." Brief of Appellants at 14. They maintain this would also alleviate the trial court's lack of personal jurisdiction over Fidelity. *See* Footnote 2. Again, we disagree.

■■ The determination whether to dismiss an action on the basis of "forum non conveniens" is vested within the trial court's sound discretion. *Freemond v. Somma* (1993), Ind.App., 611 N.E.2d 684, 690. Thus, to prevail on appeal, Fidelity and Admiral must demonstrate the trial court abused its discretion. *Id.* An abuse of discretion occurs only when the trial court arrives at a conclusion that is clearly against logic and the natural inferences to be drawn therefrom. *Id.*

Trial Rule 4.4(C) governs our determination of forum non conveniens questions. It provides:

(C) More Convenient Forum. Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.

In the exercise of that discretion the court may appropriately consider such factors as:

(1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to this action;

(2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;

(3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

(4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

We have held that "the purpose of Trial Rule 4.4(C) is to permit a cause to be litigated in another state upon a showing that litigation in Indiana is so inconvenient that substantial injustice is likely to result." *Id.* at 691.

■ Here, as we have previously determined, the Clark Superior Court has personal jurisdiction over both Fidelity and Admiral. Although the transaction at issue occurred in Kentucky, Fidelity and Admiral have failed to demonstrate that litigating this action in Indiana "is so inconvenient that substantial injustice is likely to result." *See id.* Indeed, Fidelity and Admiral acknowledge that "the distance separating the Jefferson Circuit Court in Louisville, Kentucky and the Clark Superior Court ... is represented by the length of the Kennedy and Clark Bridges." *See* Brief of Appellants at 15. In short, the record supports the trial court's order denying Fidelity and Admiral's motion to dismiss the Wests' complaint on the ground that a more convenient forum exists. Therefore, we conclude the trial court did not abuse its discretion.

### Issue Two: Service of Process

As an issue on cross-appeal, the Wests assert in their Brief of Appellee that the trial court erred when it found they failed to properly serve Fidelity. Fidelity maintains the trial court correctly determined that service of process was insufficient because the Wests did not serve Fidelity's registered agent for Kentucky. We disagree with Fidelity.

As a general rule, insufficient service of process to a defendant fails to confer the trial court's personal jurisdiction over that defendant. *Taco Bell v. United Farm Bureau Mut. Ins. Co.* (1991), Ind.App., 567 N.E.2d 163, 164. Trial Rule 4.6, which governs service of process upon organizations, provides in pertinent part:

(A) **Persons to be served.** Service upon an organization may be made as follows:

(1) In the case of a domestic or foreign organization upon an executive officer thereof, *or* if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent.

Ind.Trial Rule 4.6(A)(1) (emphasis added). We have previously held that Trial Rule 4.6(A)(1) affords a litigant "an option in an action against a corporation to serve process

upon either an executive officer or agent thereof who has been appointed to receive service." *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind.App. 295, 317, 352 N.E.2d 821, 835.

Further, in *Taco Bell*, we examined the definition of "executive officer" found in Trial Rule 83(2), which provides:

> 'Executive officer' of an organization includes the president, vice president, secretary, treasurer, cashier, director, chairman of the board of directors or trustees, officer manager, plant manager, or subdivision manager, partner, or majority shareholder. For purposes of service of process, notice, and other papers, the term includes the personal secretary of any of the foregoing persons or any person employed under or with any of the foregoing persons and who is entrusted with responsible handling of legal papers, and any person employed in the organization if such person promptly delivers the papers served to one of the foregoing.

We held that service of process directed to the chief executive officer at a corporation's local restaurant was sufficient under Trial Rule 4.6(A)(1) and 83(2), even though the chief executive officer resided and worked in California. *Taco Bell*, 567 N.E.2d at 165. "[T]he clear intent of the rule is to make service upon an organization's local manager effective as service upon the organization." *Id.* at 164.

Here, the Wests issued a summons to "Fidelity Financial Services, Inc., "c/o Highest Executive Officer, 2251 Hikes Lane, Suite 4, Louisville, KY 40216." This was the same address at which the Wests entered into the loan agreement with Fidelity and obtained insurance from Admiral. However, the Wests did not serve Fidelity's resident agent for Kentucky, Wade Walton, who was located at another office. An employee at Fidelity's Hikes Lane office, A. Jean Bryant, executed the certified mail return receipt.

Although neither the return of service nor the record indicates in what capacity Bryant was employed by Fidelity, service was delivered to and received by a person at Fidelity's Hikes Lane office in the manner required by Trial Rule 4.6(A)(1). *See Burger Man*, 170 Ind.App. at 317, 352 N.E.2d at 835. In addition, even assuming the person who received the service at Fidelity was not the intended recipient, Fidelity has not attempted to argue that the recipient failed to deliver the summons to the manager of that office as required under Trial Rule 4.16. *See Taco Bell*, 567 N.E.2d at 165. Thus, we conclude the trial court erred when it found that service directed to Fidelity's "highest executive officer" was insufficient under Trial Rule 4.6(A)(1) and Trial Rule 83(2).

The trial court's order denying Fidelity and Admiral's motion to dismiss for lack of personal jurisdiction and for a more convenient forum is affirmed. However, the trial court erred when it found that service of process on Fidelity was insufficient under Trial Rule 4.6(A)(1). The trial court's order is affirmed in part and reversed in part, and this cause is remanded to the trial court with instructions for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

BAKER and GARRARD, JJ., concur.